366 So.2d 1336 (1978)
STATE of Louisiana
v.
Wilton D. MOUTON.
No. 62414.
Supreme Court of Louisiana.
December 15, 1978.
*1337 David J. Hebert, Mannero, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, P. Michael Cullen, Asst. Dist. Attys., for plaintiff-appellee.
DIXON, Justice.
On the afternoon of May 16, 1977 a sixteen-year-old high school girl student was walking from school to her home on Wright Avenue in Jefferson Parish. A man driving an orange Volkswagen hatchback drew up beside her and asked for directions which she was unable to give him. As she was walking away, the man stopped the car and began to honk the horn. When the girl turned around, the man's genitals were exposed, and he was apparently masturbating. Almost immediately afterward the girl's boy friend drove up, and she got into his car. At her insistence, the two followed the Volkswagen until they could record its license plate number, and after a few blocks they overtook the other car at an intersection where the girl told the driver that she intended to call the police.
After the incident was reported, Officer Michael Fanning of the Jefferson Parish sheriff's department discovered that the license plate had been issued to a Wilton D. Mouton at 1144 Scotsdale Drive in Harvey. Subsequent investigation revealed that he had moved from this address about a year before the incident. Fanning then contacted the state police, who sent him a picture of Mouton taken from his driver's license. On May 31, 1977 Fanning went to the victim's home and showed her photographs of five different men. She quickly selected the photograph of Mouton taken from the driver's license.
The following day, June 1, 1977, Officer Fanning arrested Wilton D. Mouton at his home for the crime of indecent behavior with a juvenile, a violation of R.S. 14:81. The defendant was tried on December 15, 1977 and was found guilty as charged. A sentence of six months imprisonment was suspended and the defendant was placed on one year probation and was ordered to complete the program at the Jefferson Parish Mental Health Center. From this conviction and sentence the defendant appeals on the basis of three assignments of error.

Assignment of Error Nos. 1 and 3
By these assignments the defendant argues that the trial judge was in error in finding the defendant guilty. The crux of the argument in each assignment is the apparent inconsistency between the trial judge's statement that he believed Mouton's alibi witnesses to be telling the truth and his finding the defendant guilty. The defense argues that such an incongruous result demonstrates that the trial judge applied a standard of proof less stringent than "beyond a reasonable doubt," required in criminal trials. R.S. 15:271; State v. Ledet, 345 So.2d 474 (La.1977); State v. Slayton, 338 So.2d 694 (La.1976).
The record reveals that the defendant failed to file a motion for a new trial, the appropriate procedural vehicle for raising *1338 an evidentiary question. C.Cr.P. 851(1); State v. Winzer, 354 So.2d 533 (La.1978). Even assuming that the defendant had requested a new trial, a denial of a motion for new trial when based merely on the sufficiency of the evidence presents nothing for this court's review. State v. Edwards, 354 So.2d 1322 (La.1978); State v. Jack, 332 So.2d 464 (La.1976).
However, here the defendant's allegation is more than a mere recitation of the elements of C.Cr.P. 851(1), for in effect he argues that the trial court made a conclusive factual finding which is completely inconsistent with its decisionthat the defendant could not have committed the offense since he was with his friends at the time of the incident but that he was nevertheless guilty. However, we need not decide whether such an inconsistency is reviewable by this court since it is clear that the trial judge did not find the testimony of the alibi witnesses to be accurate, but only that they were testifying in good faith and that they were relating the events of the afternoon in question to the best of their ability.[1] Moreover, it is also clear from the trial judge's reasons for judgment that he did indeed apply the beyond-a-reasonable-doubt standard in assessing the defendant's culpability. He stated that the victim's testimony left the court with no doubt of the defendant's guilt. State v. Otis, 339 So.2d 343 (La.1976).
These assignments lack merit.

Assignment of Error No. 2
By this assignment the defense argues that the trial court erred in admitting a statement made to Officer Fanning by the defendant after he was arrested. Fanning testified at trial that the defendant told him that he had gone bowling at about 5:30 p. m. on the day of the offense. Although the defendant clearly intended the statement to be exculpatory and adhered to it at trial, he at that time did not mention having gone trawling with friends and relatives earlier in the day, which was part of the alibi he presented at trial. The prosecution placed emphasis on the omission during closing argument:
"Now, I sincerely doubt that they can remember all those times that they remember so specifically. But you would think that a man who was arrested for a crime would remember the first day of trawling season, that they all remember so clearly now; that's the day.
They remember these times so well, but he didn't make any allusion to trawling, breaking shrimp heads, anything like that. He talked about how he goes bowling on Monday nights, according to the detective's testimony.
Sometimes afterwards, he remembered about the trawling season and that he was trawling and brought in several witnesses to say he was trawling.
So, I think there's reason to disbelieve the defense's case and really no reason to disbelieve (the victim's) testimony."
The defense takes the position that the statement was inadmissible because it was the product of a custodial interrogation which was continued after the defendant made evident his desire to communicate with his attorney. Such questioning is said to violate the standards established in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 14 L.Ed.2d 694 (1966), wherein the statement appears that investigating officers must terminate any questioning once *1339 the accused has voiced a desire to consult with an attorney. See also, State v. Dominick, 354 So.2d 1316 (La.1978).
Officer Fanning's testimony, which constitutes the only evidence on this point, was that he immediately placed the defendant under arrest and gave him full Miranda warnings. The defendant then sought and obtained Fanning's permission to contact his attorney but was unable to do so because his telephone was out of order. At this point the record is unclear concerning the exact sequence of events after the abortive telephone call. Fanning testified that the defendant then began to talk to him, and that it was during this colloquy that Mouton attempted to explain his movements on May 16. According to the officer, the defendant indicated that he understood all his rights and was told that he should not speak to the officer unless he waived his right to an attorney. Officer Fanning also stated that the defendant spoke voluntarily and that he began asking him questions only after the defendant spoke freely and on his own. On the other hand, there is some indication that Fanning initiated the conversation after Mouton tried to call his attorney:
"Q. Did you ask him specifically, `Do you waive your rights against self incrimination?'
A. I asked him do you want to speak to me?"
If a person accused of a crime expresses a desire to speak to an attorney, the investigating officers must cease any questioning of the accused until an attorney is present. Miranda v. Arizona, supra; State v. Dominick, supra. Although nothing prevents a person from later changing his mind and waiving that right, State v. Dominick, supra; State v. Peevy, 321 So.2d 324 (La. 1975); see also, United States v. Rodriguez-Gastelum, 569 F.2d 482 (9th Cir. 1978 en banc); Nash v. Estelle, 560 F.2d 652 (5th Cir. 1977), (en banc rehearing granted, 560 F.2d 660), the prosecution bears a heavy burden to show that he knowingly and willingly waived the right to counsel. State of Louisiana in the Interest of Dino, 359 So.2d 586 (La.1978); State v. Alexander, 328 So.2d 144 (La.1976).
The defense argues that waiver cannot be proved by the state because Mouton felt compelled to answer any questions put to him by Fanning. The defense notes that the defendant unambiguously opted for an attorney's aid, but that Fanning nevertheless continued asking questions after the attorney could not be reached. The statements used against Mouton were a direct result of Fanning's questions about his activities during the afternoon of May 16.
Nevertheless, a review of the record convinces us that the trial court's ruling, finding a waiver of the right to counsel, is supported by the evidence. Fanning told Mouton not to talk to him unless he waived his right to counsel and that anything he said could be used against him in court. Fanning also testified that Mouton had expressed an understanding of his rights and yet continued to speak. Although the defense stresses the compulsive nature of the defendant's position, an equally plausible conclusion is that Mouton was willing to talk to Fanning once he realized that his phone was out of order. Only moments earlier Mouton had been sufficiently at ease to request counsel, making it unlikely that his will was overborne in such a short time. His desire to attempt to exculpate himself by explaining his movements on the day in question was an error in judgment on his part and is not chargeable to the state.
This assignment is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] In his reasons for judgment, the trial judge made the following reference to the testimony of Mouton's witnesses:

"I listened to the rest of this testimony and the testimony of the accuracy of the time and place. I understand how people will attempt then to put together with accuracy as well as they can, the time and place that these things occurred. And I don't fault anybody. I'm not considering for a moment, anyone got on my stand and purposely lied; I don't believe they did. I think each one of them was attempting to testify to the very best of his ability about what happened. But their testimony does not overcome the absolute, positive, direct testimony of this little girl, in what happened, and where it happened and who was the one that did it. She was very straightforwarded, very direct, and left no doubt in the Court's mind as to the accuracy of her identification. Not only did she identify him once, she identified him twice. . . ."