386 So.2d 1331 (1979)
STATE of Louisiana
v.
Carlos R. POREE.
No. 64308.
Supreme Court of Louisiana.
November 1, 1979.
On Rehearing March 3, 1980.
Order March 7, 1980.
Robert J. Zibilich, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
On November 7, 1977, within the space of a few hours, Carlos Poree shot ten people. Among the targets of his violence only two individuals, his estranged wife and her father, were known to him; the others were all men he encountered on the streets of New Orleans and in the offices of a brokerage firm. One of his victims died of his wounds, and Poree was indicted for murder in the first degree. Poree entered pleas of not guilty and not guilty by reason of insanity, in accordance with C.Cr.P. 552(3). A sanity commission, appointed pursuant to C.Cr.P. 650[1], found the defendant incompetent to stand trial by reason of present *1332 insanity, and he was transferred to the East Louisiana State Mental Hospital for observation and evaluation. Five months later, after a course of psychotropic medication, defendant was determined legally sane and competent to stand trial.
At trial,[2] all of the facts were stipulated by the prosecution and the defense so that Poree's sanity was the only issue for the jury. After hearing evidence on this issue, the jury returned a verdict of guilty as charged. The defense moved for a new trial on two grounds;[3] one, that of jury misconduct, need not concern us here. The other ground was that the verdict was contrary to the law and the evidence because there was no evidence to refute the defendant's proof of insanity. The trial court denied the motion for a new trial, defendant was sentenced to life imprisonment, then took an appeal.
Under the Louisiana statutory scheme governing insanity in criminal cases, a defendant is exempt from criminal responsibility "[i]f the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question ..." R.S. 14:14. However, R.S. 15:432 establishes a legal presumption that the defendant is sane and responsible for his actions.[4] This statute also provides that the effect of this presumption is to relieve the State of the necessity of any proof of defendant's sanity, but that the presumption of sanity may be destroyed by rebutting evidence on the part of the defendant. Under C.Cr.P. 652,[5] insanity is an affirmative defense which the defendant must prove by a preponderance of the evidence.
At trial the defendant's evidence of insanity at the time of the offense consisted of the testimony of his wife and his father-in-law, both still suffering the physical effects of his attacks, and of two psychiatrists. Both Mrs. Poree and her father testified that the defendant was a cheerful, peaceful person and an ideal husband and son-in-law until about five months before the shootings. At that time, according to Mrs. Poree, the defendant began to demonstrate a fear of airplanes flying overhead, to shut himself up in the house, to secretively take notes while watching television, to be obsessed with jealousy of his wife, and to engage in outbursts of anger of increasing *1333 frequency and duration. Because of these changes in Poree's behavior, the couple began to consult a psychologist some weeks before the shootings, and Mrs. Poree was forced to return to the home of her parents. Mrs. Poree's father testified that, on the morning of the shootings, the defendant was abnormal in speech and appearance, that he looked insane, and that he seemed unable to understand what was said to him. Of the psychiatrists who testified for the defense, one had first seen the defendant immediately after the shootings, the other two months later. On the basis of their own examinations of the defendant, defendant's responses to medication, and others' reports of defendant's behavior, both experts stated unequivocally that the defendant was suffering from paranoid schizophrenia and that at the time of the offense he was incapable of distinguishing right from wrong.
The prosecution's evidence on the issue of sanity consisted of the testimony of four employees of the brokerage firm and of the two police officers who arrested the defendant. One employee testified only as to the physical layout of the brokerage office and to the fact that, at the time of the shooting, she had a brief glimpse of a man with a gun; the second employee testified only that the defendant hit her with his hand; the third testified that he saw the defendant stop at the desks at which three employees were working and shoot the two male employees but not the female; the fourth testified that the defendant's motions in shooting him were calm and cool. The content of the police officers' testimony was that, after an initial movement toward his gun, the defendant offered no violent resistance to being taken into custody and that, in response to one officer's spontaneous exclamation of "What the hell is going on here?" the defendant said, "I'm not making any statements until I speak to my attorney." With regard to the latter point, one of the psychiatrists, testifying for the defense earlier in the trial proceedings, stated that this comment by defendant was not incompatible with a diagnosis of paranoid schizophrenia and insanity at the time of the offense, but could rather be explained by the defendant's delusion that the police knew what he was doing and were controlling his behavior. It should also be noted that at the time of his arrest, defendant had no attorney and no funds with which to engage one; he was represented at trial by an attorney appointed by the court.
It is clear, then, that defendant's evidence of insanity was uncontroverted, and that his motion for a new trial should have been granted. Under present jurisprudence, however, this court will review the denial of a new trial motion only when the motion is grounded on a claim of no evidence [6] of the crime charged or an essential element thereof. State v. Thompson, 366 So.2d 1291 (La. 1978), State v. Williams, 354 So.2d 152 (La. 1977). Because such a claim presents a question of law, it evokes the appellate jurisdiction of this court, which is limited in criminal cases by Art. V, § 5(C) of the Louisiana Constitution of 1974[7] and C.Cr.P. 858[8] to errors of law. When, on the other hand, a new trial motion claims that the verdict was contrary to the law and evidence, it has consistently been held that the denial of such a motion presents nothing *1334 for this court to review. State v. Mouton, 366 So.2d 1336 (La. 1978), State v. Edwards, 354 So.2d 1322 (La. 1978).
The rule that appellate review is available on a claim of no evidence functions to protect the defendant against the denial of due process which would occur if a guilty verdict were returned after the prosecution failed to introduce any evidence as to an element of the crime which it is required to prove. This rule is broad enough to assure due process in almost all cases; its deficiency becomes apparent only in a situation like the one now before us, where the trier of fact must make a determination of guilt or innocence on the basis of evidence for which the burdens of production and persuasion are on the defendant, and to which the prosecution need only respond in rebuttal.[9] Due process requires that a defendant in this posture must also have access to review when he claims that he was found guilty of an offense despite the fact that the evidence of his insanity was uncontroverted.[10]
The necessity of such review becomes apparent when we recognize the peculiar position which the determination of sanity or insanity occupies under the current law of this State. The due process clause of the Fourteenth Amendment of the United States Constitution demands that the state must prove, beyond a reasonable doubt, every fact necessary to constitute the offense charged. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Although it has been held that due process is not violated where insanity is treated as an affirmative defense which the defendant must prove, Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the Patterson court also noted that a majority of jurisdictions have followed the lead of the federal courts in "shoulder(ing) the burden of proving the sanity of the accused;" id. at 203, 97 S.Ct. 2323, 53 L.Ed.2d 287. Louisiana is one of those states in which insanity is still an affirmative defense which the defendant must prove by a preponderance of the evidence. The burden of production and persuasion which this allocation of responsibility places on the defendant is not only a weighty one; it is also as crucial, in and of itself, to the fact finder's determination of guilt or innocence as is any one of the elements which the prosecution must prove.
As we have indicated, the presumption[11] of sanity which serves to shift the burden *1335 of proving insanity to the defendant is a rebuttable presumption: upon the defendant's production of evidence of insanity, the presumption is destroyed,[12] and if the defendant's evidence outweighs that of the state, the fact finder must find him not guilty by reason of insanity.[13] This system is constitutionally mandated; in Jackson v. Virginia, 443 U.S. 307, 314, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560, 570 (1979), the United States Supreme Court acknowledged a "premise that has never been doubted in our constitutional system: that a person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend." (Emphasis added). Obviously, the affirmative defense of insanity would be totally devoid of meaning if the trier of fact were free to find the defendant guilty even when he proves insanity by a preponderance of the evidence. And, in a capital case such as the one before us, "[j]uries ... (would) ... have practically untrammeled discretion to let an accused live or insist that he die;" Douglas, J., concurring, Furman v. Georgia, 408 U.S. 238, 248, 92 S.Ct. 2726, 2731, 33 L.Ed.2d 346, 355 (1972).
The motion for a new trial on the ground that the verdict is contrary to the law and evidence provides one form of relief to a defendant who finds himself in the situation hypothesized above, at the trial court level. If such a motion is denied, however, the defendant may have no access whatsoever to appellate review, even where the prosecution has introduced no evidence proving his sanity. In light of the fact that such review is available when defendant makes a no evidence claim about a fact that the prosecution must prove, it is apparent that the defendant who pleads insanity suffers a double disability: he must not only carry, on a crucial issue, the burdens of production and persuasion which are generally allocated to the state, but he must also do so without any access to appellate review. Yet the right to judicial review is guaranteed by Art. 1, § 19 of the Louisiana Constitution of 1974,[14] and the salience of that right under the due process clause of the Fourteenth Amendment of the United States Constitution was recently reaffirmed in Jackson v. Virginia, supra.[15]
We therefore hold that, as a matter of law,[16] defendant was denied due process when he was found guilty as charged, despite his uncontroverted evidence of insanity, and that his motion for a new trial should have been granted.
The conviction and sentence are reversed, and the case is remanded to the trial court.
SUMMERS, C. J., and MARCUS, J., dissent.
CALOGERO, J., concurs and assigns reasons.
DENNIS, J., concurs and assigns reasons.
*1336 BLANCHE, J., dissents and assigns reasons.
CALOGERO, Justice, concurring.
I concur in the majority opinion authored by Justice Dixon, and I join in the reasons assigned by Justice Dennis in concurrence because I do not believe that the state should be barred from attempting to secure a verdict of not guilty by reason of insanity, with its attendant consequences (the defendant shall be committed to a state mental institution in accordance with La.C.Cr.P. art. 654-660, etc.).
Inasmuch as defense counsel stipulated that defendant shot the victim, and the sole issue at trial was sanity v. insanity, release of the defendant hereafter on double jeopardy principles would subvert the ends of justice.
DENNIS, Justice, concurring.
I respectfully concur in the majority's reversal of the defendant's conviction and sentence. The evidence does not provide a rational basis for a finding that the defendant Poree knew right from wrong at the time of the offense; therefore, the trial judge erred in failing to grant the motion for new trial. However, I believe that the decree requires clarification regarding what is to be done by the trial court on remand.
This Court's decision is that as a matter of law the defendant cannot be found guilty, based on the evidence in the record. Accordingly, a violation of the prohibition against double jeopardy will result under Greene v. Massey, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1, if, on remand, Poree is again placed in jeopardy of being found guilty under the charge against him; the only verdicts legally possible in a new trial, therefore, are not guilty and not guilty by reason of insanity. Consequently, this Court's decree should reverse the conviction and sentence and remand for a new trial to determine if the defendant is not guilty or not guilty by reason of insanity, prohibiting any verdict of guilty.
BLANCHE, Justice (dissenting).
I respectfully dissent. The jury apparently did not believe evidence of defendant's insanity was sufficient to rebut the presumption of sanity. The sufficiency of the evidence on this issue was one for jury determination and not this Court's.

ON REHEARING
WATSON, Justice.[*]
The State's application for rehearing was granted to reconsider the conclusion "... that defendant was denied due process when he was found guilty as charged, despite his uncontroverted evidence of insanity ...".
The general facts are stated accurately in the original opinion. Poree went on a shooting spree on November 7, 1977. He shot ten people: two victims were his estranged wife and father-in-law; the others were men encountered on the streets and in a stockbroker's office. One, George Held, died and Poree was indicted for first degree murder (Tr. 1). At trial, all of the facts were stipulated by the prosecution and the defense; the only issue for the jury was that of Poree's insanity. The jury heard the testimony of two psychiatrists, Dr. Aris Cox and Dr. Herman Colomb; the testimony of Poree's wife, Dianna Marie Poree, and father-in-law, Alvin Broussard; and the testimony of persons present in the brokerage office and the arresting police officers.
The jury found the defendant guilty as charged. A sentencing hearing was immediately held which consisted only of opening statements by the State and the defense, a stipulation that the defendant had no criminal record, and the closing statements. The jury then returned a verdict of life imprisonment without the benefit of probation, parole or suspension of sentence (Tr. 18).
*1337 The defense filed a motion for new trial claiming two grounds: (1) that the verdict was contrary to the law and the evidence because there was no evidence to refute the contention that defendant was legally insane at the time of the commission of the offense, and (2) misconduct by the jury in discussing the case prior to having been instructed by the court.[1]
The trial court denied the motion for new trial, sentenced the defendant in accordance with the verdict of the jury, and defendant appealed.

ASSIGNMENT OF ERROR 3a. THE INSANITY DEFENSE
On original hearing the majority reviewed thoroughly the evidence bearing on the question of defendant's sanity at the time of the commission of the offense and concluded that "... the presumption of sanity which serves to shift the burden of proving insanity to defendant is a rebuttable presumption: upon the defendant's production of evidence of insanity, the presumption is destroyed, and if the defendant's evidence outweighs that of the State, the fact-finder must find him not guilty by reason of insanity." We now find that the majority on original hearing erred in this conclusion.
Essential to an analysis of the assignment of error is the consideration of the function of the jury and the reviewing court in criminal cases under our State constitutional and statutory law, particularly as related to the plea of not guilty by reason of insanity.
The Louisiana Constitution of 1974 provides for the right of an accused to trial by jury. As applicable in Poree's case, Article 1, Section 17 provides in part:
"A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict."
Additionally, the person who has been tried by a jury is assured of the right of appeal by Article 1, Section 19 which provides that a person shall not be imprisoned or required to forfeit rights or property "... without the right of judicial review based upon a complete record of all evidence upon which the judgment is based."
Appeal to the Louisiana Supreme Court is provided in criminal cases by Article 5, Section 5(D). The duty of the Supreme Court when considering matters on appeal is set forth with particularity in Article 5, Section 5(C) as follows:
"(C) Scope of Review.
"Except as otherwise provided by this constitution, the jurisdiction of the supreme court in civil cases extends to both law and facts. In criminal matters, its appellate jurisdiction extends only to questions of law."
As recently as 1976 the scope of review as provided in Article 5, Section 5(C) has been authoritatively stated by this court in a unanimous opinion as applicable to the issue of insanity. Justice Tate, writing for the court in State v. Fletcher, 341 So.2d 340 (La.1976), discussed the proper review of a jury's factual finding of sanity as follows:
"Assignment 21 also urges that the accused should have the right to appellate review of the jury's factual finding of sanity at the time of the offense. Assignment 11 raises the issue that Louisiana's statutory scheme for the trial of the defense of not guilty by reason of insanity deprives him of due process and equal protection in violation of constitutional right; one reason advanced is that there is no statutory scheme to ascertain, separately from the determination of guilt, the number of jurors who specifically voted against the accused's plea of not guilty by reason of insanity.
"Without summarizing the subtle arguments advanced by the accused's counsel, it is sufficient to state that we find no constitutional requirement for appellate review of the defense of insanity at the time of the crime, nor for separately polling *1338 the jury as to this factual defense. The unanimous general verdict of the jury, properly instructed as to factual defense of insanity, constitutes a factual rejection of this defense as well as of the others urged.
"The appellate jurisdiction of this court to review this factual issue is limited to issues of law by our state constitution, La.Const. Art. 5, Section 5(B). We are cited to no persuasive authority that this historic limitation of review, common to that of many American jurisdictions, offends constitutional guarantees of due process and equal protection." 340 So.2d 343, 344.
Following the constitutional mandate of reviewing only issues of law in criminal appeals, this court has consistently held that it may consider error in the denial of a motion for new trial only when the defendant contends that there is no evidence of the crime charged or of an essential element of the crime. This contention presents a question of law rather than a question of fact. State v. Arnold, 351 So.2d 442 (La.1977). See also State v. Madison, 345 So.2d 485 (La.1977) where this court noted that "... we may not consider the sufficiency of the evidence, but only whether there was some evidence of each essential element of the crime charged." 345 So.2d 495.
Applying these rules to the instant appeal, it is apparent that the question before us is whether there was any evidence before the jury on which it could reach the conclusion that the defendant had failed to prove his defense of insanity.
The statutory law is clear:
"The defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence."
This has been the rule in Louisiana for many years. See State v. Scott, 49 La.Ann. 253, 21 So. 271 (1897). The defendant is not required to prove insanity beyond a reasonable doubt but only by a preponderance of the evidence. State v. Stewart, 238 La. 1036, 117 So.2d 583 (1960).
The thrust of defendant's argument is that all of the evidence pointed to his insanity and there was no evidence of sanity, or as stated by the original majority opinion, the evidence of insanity was uncontroverted.
It is correct that the two psychiatrists who examined Poree gave their opinions that at the time of the offense he did not know the difference between right and wrong, which is the test of insanity under the Louisiana Criminal Code. LSA-R.S. 14:14 reads as follows:
"If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility."
Dr. Aris Cox, who examined Poree some ten times, testified that in his opinion Poree was unable at the time of the commission of the crime to distinguish right from wrong (Tr. 102). Likewise, Dr. Colomb, who saw Poree only once about twenty-three days after the offense, indicated that Poree was unable to distinguish right from wrong (Tr. 128). Dr. Cox, while consistent in his view that Poree was legally insane and a paranoid schizophrenic, admitted that Poree was somewhat old to develop that illness (Tr. 96). Also, Dr. Cox indicated that there was some indication of an understanding of wrongdoing in Poree's request to talk to an attorney.
Dr. Colomb also testified that all indications were that Poree was legally insane, but that Poree's failure to confront the two police officers violently when he faced their drawn guns indicated a type of rational decision making on Poree's part. He also stated that following confrontation by the officers, Poree's request to speak to an attorney before he would say anything to anyone was an act of discernment, although the doctor said it did not necessarily mean that the defendant realized he had done wrong.
The other witnesses called by the defendant were Poree's estranged wife and her father who described the incident which *1339 occurred on the morning of November 7, 1977, when Poree came to the father's house located at 1015 Adam Street in New Orleans. There the defendant shot both of them, but not mortally.
Called in rebuttal on the issue of insanity by the State were a number of witnesses who worked at the stockbroker's office on Common Street, where the later shooting episode occurred and where George Held received his fatal wounds. They described Poree's entry into the office and his shooting various males, but no females, who were present on the premises.
The evidence that is emphasized by the State as reflecting Poree's ability to distinguish between right and wrong is that of the police officers who arrested him. The first officer, William Schultz, testified about the apprehension of the defendant near the corner of Common and Baronne Streets. He, along with his partner, Detective Stan Barre, were traveling in an unmarked police car when they heard a sound that was similar to a gunshot. They got out of the police car and observed Poree running across an intersection, while a number of people were yelling and throwing themselves on the ground. Officer Schultz observed that Poree had a revolver in his right hand and then saw him place it in his waist-band. When Poree approached Officer Schultz, the officer had his revolver in his hand, stepped forward, and ordered Poree to freeze. When he did so, Poree started to reach for his gun but Schultz said "Police. Turn around and put your hands on the glass." (Tr. 189). Poree hesitated, but complied. The officer retrieved the gun, the barrel of which was still hot. The officer placed Poree face down on the pavement and handcuffed his hands behind him. He then got Poree on his feet and put him in front for protection, fearing there might be other gunmen in the area. People pointed at Poree and said, "that's him; that's him." The officer then said to Poree, "What the hell is going on here?". As he did so Poree said, "I'm not making any statements until I speak to my attorney." (Tr. 191)
The State emphasizes that it is important to note that when Poree was confronted by the armed officers, he possessed sufficient discernment to avoid going for his weapon or offering any defense to the arrest and that when asked about the situation by the officer, Poree declined to make any statement until talking to a lawyer. Detective Barre confirmed the account given by Officer Schultz in its various aspects. His recollection of what Poree said was "I'm not going to say anything until I speak to my attorney." (Tr. 197)
There is no question that the evidence of Poree's sanity, as reflected by the testimony of the psychiatrists and the lay witnesses, is weak. However, it is impossible to conclude that there is no evidence of sanity. It is also important to remember that every person is presumed to be sane. State v. Chinn, 229 La. 984, 87 So.2d 315 (1956). It is presumed that the jury was charged[2] as to the presumption of sanity, and that the defendant has the statutory burden of proving his insanity.
The jury concluded that Poree had not borne his burden of establishing the defense of insanity. Our review is limited by the constitutional and statutory provisions, cited supra, to considering whether the trial court erred in failing to grant a new trial on the basis that there was no evidence to establish sanity. The record contains some evidence which indicates a capability of "distinguishing between right and wrong" (LSA-R.S. 14:14, cited supra). Therefore, we cannot hold that the trial court erred in denying the motion for new trial based on the no evidence contention. The assignment of error relating to evidence of sanity is without merit.

ASSIGNMENT OF ERROR NUMBER 3b.
The other claim of error on appeal is that there was misconduct by the jurors in discussing the case among themselves prior to being charged by the judge. At the *1340 hearing on the motion for new trial, counsel for defendant proposed to call the jurors and alternate juror to be examined concerning possible jury misconduct. The State objected on the basis of LSA-R.S. 15:470 which provides that a juror is not competent to impeach the verdict of the jury. The trial court sustained the objection and denied the motion for a new trial. It is clear from the statement by defense counsel (Tr. 202) at the hearing on the motion for new trial that the questions he proposed to ask the jurors would require them to violate the statutory provision. The trial court properly sustained the State's objection.
There is no merit to this assignment of error.

DECREE
The decree of the original opinion is recalled and set aside. The conviction and sentence of the defendant are affirmed.
AFFIRMED.
DENNIS, J., dissents for reasons assigned by DIXON, J.
DIXON, J., dissents with reasons.
CALOGERO, J., dissents and assigns reasons.
DIXON, Justice (dissenting).
I respectfully dissent.
None of the evidence presented by the state is inconsistent with the testimony of the psychiatrists that defendant did not know right from wrong at the time of the offense. Nonetheless, the majority bases its holding on the now outmoded "some evidence" rule and ignores Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). No rational trier of fact could have found Poree sane beyond a reasonable doubt, nor does the majority indicate otherwise.
In the record in this court on appeal are the findings of two additional psychiatrists who, in conjunction with Dr. Colomb, formed the sanity commission appointed by the court to determine whether Poree was competent to stand trial. In a letter written to the court approximately six weeks after the offense, all three experts stated that they found that Poree was not only unable to assist his counsel but was also insane, unable to appreciate the usual, natural and probable consequences of his acts, and unable to distinguish right from wrong. The conclusions of all three psychiatrists were based on their interviews with prison personnel and members of the prison's medical and nursing staff, as well as on personal observation of the defendant himself, in one case involving six observations conducted during a period beginning about three weeks after the shootings. The record also shows that in a hearing held to determine whether Poree had regained the capacity to stand trial as a result of the administration of psychotropic medication, yet another psychiatrist testified that upon his admission to the East Louisiana State Hospital for such treatment, Poree seemed to be suffering from schizophrenia accompanied by hallucinatory, delusional experiences.
In arguing before this court on rehearing, the state attacked the original majority opinion on the ground that it accorded greater weight to the expert psychiatric testimony than to the testimony of the state's lay witnesses. Of course, lay witnesses are usually not in a position to testify as to whether a defendant was able to distinguish right from wrong at the time of an offense. The testimony of both the state's lay witnesses and the defendant's lay witnesses could therefore in no way be conclusive on this crucial point. But the most poignant part of the record before us is comprised of the testimony of Poree's wife and father-in-law, both victims of his senseless attacks, reporting the tragic deteriorative changes in his previously exemplary character and personality, and his insane comportment on the day of the offense.
CALOGERO, Justice, dissenting.
I respectfully dissent. The majority has found that there was some evidence that Poree was sane. While I disagree with that conclusion and with their use of the "some evidence" standard rather than the standard *1341 required by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), my primary objection is that the majority has changed the law relating to the burden of proof on insanity.
Insanity is an affirmative defense in Louisiana which the defendant must establish by a preponderance of the evidence. C.Cr.P. 652. R.S. 15:432 requires a defendant to come forward with some evidence of insanity to destroy the presumption of sanity. Once defendant presents some evidence of insanity the presumption is destroyed and the state is then required to prove that defendant was sane. To hold otherwise would relieve the state of its due process burden of proving beyond a reasonable doubt every fact necessary to constitute the offense charged. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

ORDER
All proceedings in # 64,308 and # 66,318 are stayed for 90 days from this date to permit an application for writs to the United States Supreme Court.
March 7, 1980.
 /s/ John A. Dixon, Jr. 
 Chief Justice
NOTES
[1] C.Cr.P. 650 provides in pertinent part:

"When a defendant enters a combined plea of `not guilty and not guilty by reason of insanity,' the court may appoint a sanity commission as provided in Article 644 to make an examination as to the defendant's mental condition at the time of the offense. The court may also order the commission to make an examination as to the defendant's present mental capacity to proceed...."
[2] Defendant's first trial ended in a mistrial when the jury was unable to agree upon a verdict. The appeal before us here concerns his second trial.
[3] C.Cr.P. 851 provides:

"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right."
[4] R.S. 15:432 provides in pertinent part:

"A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption attaching to the regularity of judicial proceedings; that the grand jury was legally constituted; that public officers have done their duty; that a relation or subject-matter once established, continues, but not that it pre-existed; that the defendant intended the natural and probable consequence of his act; that the defendant is innocent; that the defendant is sane and responsible for his actions; ..."
[5] "The defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence." C.Cr.P. 652.
[6] The status of this "no evidence" standard may be in question in the light of Jackson v. Virginia, which recently held that an applicant for federal habeas corpus who challenges a state criminal conviction will be entitled to such relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560, 576-577 (1979).
[7] Art. V, § 5(C) provides:

"Except as otherwise provided by this constitution, the jurisdiction of the supreme court in civil cases extends to both law and facts. In criminal matters, its appellate jurisdiction extends only to questions of law."
[8] "Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law." C.Cr.P. 858.
[9] See note 4, supra, and accompanying text.
[10] Our awareness of this deficiency is implicit in at least three earlier cases involving the insanity defense. In State v. Craig, 340 So.2d 191 (La. 1976), we noted that the defendant's claim that the verdict was contrary to the law and evidence provided nothing for this court to review, but we went on to consider his contention that the verdict was contrary to the psychiatric evidence. In State v. Daigle, 344 So.2d 1380 (La. 1977), defendant's motion for a new trial on the ground of a verdict contrary to the law and evidence was denied. He then asked this court to order a new trial on the "ends of justice" ground of C.Cr.P. 851(5), supra, note 3, claiming that the evidence preponderated that he was unable to distinguish right from wrong. We held that there was nothing for this court to review because the trial court had not had an opportunity to rule on this new ground, but we also noted that "[w]e believe that defendant makes here a very serious argument," id. at 1388. State v. Rollins, 351 So.2d 470 (La. 1977), also involved the denial of a new trial motion which claimed that the verdict was contrary to the law and evidence. The specific contention was that psychiatric testimony at trial overwhelmingly showed that the accused was insane at the time of the offense. This court noted that its appellate jurisdiction extends only to questions of law and not to the sufficiency of the evidence, but it reviewed the denial of the new trial motion on the theory that such a determination could be reversed upon a finding of clear abuse of the trial court's discretion.
[11] According to the analysis presented in Ashford and Risinger, Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview, 79 Yale L.J. 165 (1969), this is an assumption, not a presumption. The authors distinguish between a true presumption, which in a criminal case shifts the burden of introducing evidence as to a given issue to the defendant, while the burden of persuasion remains with the prosecution; and an assumption, which imposes upon the defendant not only the burden of introducing evidence but also the burden of persuasion and the risk of non-persuasion. They conclude that when an assumption is in operation, there is a considerable risk that the due process requirement of precision in the guilt determination process will be violated.
[12] R.S. 15:432, supra, note 4.
[13] There is dictum in State v. Marmillion, 339 So.2d 788 (La. 1976), to the effect that the state is not required to produce countervailing proof of sanity. This statement is misleading: the presumption of sanity operates to remove the state's burden of proving defendant's sanity in making its case initially; but once this presumption is destroyed by defendant's evidence of insanity, the statutory "preponderance of the evidence" standard clearly envisions a situation in which the fact finder must weigh the evidence of the defendant against the evidence of the state.
[14] Art. 1, § 19 provides in pertinent part:

"No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based. ..."
[15] See note 6, supra.
[16] See State v. Sands, 10 Or.App. 438, 499 P.2d 821, 822 (1972), in which the Oregon Court of Appeals stated that "[c]onsistent with the approach followed, we believe, by a majority of other courts, we hold the evidence of insanity can be so substantial that the matter should be withdrawn from the trier of fact and decided favorably to the defendant by the trial judge as a matter of law."
[*] Chief Judge Paul B. Landry, participated in this decision as Associate Justice ad hoc, in place of Summers, C. J.
[1] These grounds were argued as assignments of error in this court on the contention that the trial court erred in failing to grant a new trial.
[2] The jury charges are not in the record, but there is a notation that there was no objection or error assigned as to jury instructions.