NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-457

STATE OF LOUISIANA

VERSUS

JOHN W. HATFIELD, III

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. CR-2012-873
HONORABLE C. KERRY ANDERSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

JOHN D. SAUNDERS
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Billy Howard Ezell, and D. Kent Savoie,
Judges.

AFFIRMED.

**James R. Lestage**
**District Attorney 36th Judicial District Court**
**Richard F. Blankenship**
**Assistant District Attorney**
**P. O. Box 99**
**DeRidder, LA 70634**
**(337) 463-5578**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
       **State of Louisiana**

**Chad Ikerd**
**Louisiana Appellate Project**
**P.O. Box 2125**
**Lafayette, LA 70502**
**(225) 806-2930**
**COUNSEL FOR DEFENDANT/APPELLANT:**
       **John W. Hatfield, III**

**SAUNDERS, Judge.**

On February 14, 2013, a grand jury indicted Defendant, John W. Hatfield, III, for the second degree murder of four-year-old Tanner Bailey. A sanity commission was appointed on February 26, 2013, to determine whether Defendant was able to proceed and whether he was sane at the time he committed the murder. The trial court appointed Dr. Flynn Taylor and Dr. James Anderson to evaluate Defendant and determine whether he was competent to stand trial.

Dr. Anderson determined Defendant was incompetent to proceed to trial. He recommended treatment in an inpatient hospital setting and believed Defendant could be returned to competency with the appropriate treatment. Dr. Flynn could not give "a real answer as to weather [sic] [Defendant was] fully competent."

On June 26, 2013, the trial court found Defendant lacked the appropriate mental capacity to stand trial and ordered him committed to the Feliciana Forensic Facility. On August 26, 2014, the trial court found Defendant's competency to stand trial had been restored. Defendant entered pleas of not guilty and not guilty by reason of insanity.

A jury found Defendant guilty of second degree murder on March 3, 2016. The trial court sentenced Defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, to run consecutively to any other sentence. The trial court also recommended Defendant be placed in a mental health unit during his prison term.

Defendant now alleges he proved by a preponderance of the evidence that he was legally insane at the time of the murder, and no rational jury could have found otherwise.

## FACTS:

On December 18, 2012, Defendant, a diagnosed paranoid schizophrenic, stabbed and killed his four-year-old nephew, Tanner Bailey.

## ASSIGNMENT OF ERROR:

Defendant contends he proved by a preponderance of the evidence that he was legally insane at the time of this crime, and no rational juror could have found otherwise. We disagree.

Under La.Rev.Stat. 14:14:

> If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.

However, in Louisiana there is a legal presumption that the defendant is sane and responsible for his actions. La.Rev.Stat. 15:432; *State v. Poree*, 386 So.2d 1331 (La.1979). Therefore, to overcome this presumption of sanity, the defendant has the burden of proving by a preponderance of the evidence that he suffered a mental disease or a mental defect which prevented him from distinguishing between right and wrong with reference to the conduct in question. La.Code Crim. Pro. art. 652; *State v. Armstrong*, 94-2950, pp. 4-5 (La.4/8/96), 671 So.2d 307, 309; *State v. Silman*, 95-0154, p. 7 (La.11/27/95), 663 So.2d 27, 32; *State v. Peters*, 94-0283, pp. 8-9 (La.10/17/94), 643 So.2d 1222, 1225-26. Sanity is a factual matter for the jury, to be determined from all of the evidence, both lay and expert, along with circumstances surrounding the events and testimony relating to the defendant's behavior before, during, and after the crime. *State v. Price*, 403 So.2d 660, 663-64 (La.1981); *State v. Claibon*, 395 So.2d 770, 772 (La.1981); *State v. Roy*, 395 So.2d 664, 668-69 (La.1981). A determination of the weight of the evidence is a question of fact that rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness, and if rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all of the evidence most favorable to the prosecution must be adopted. *State v. Silman*, 95-0154, p. 12, 663 So.2d at 35.

In reviewing a claim for insufficiency of evidence in an action where the affirmative defense of insanity is raised, the appellate court, applying the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), must determine whether under the facts and circumstances of the case, any rational fact finder, viewing the evidence most favorably to the prosecution, could

2

> conclude, beyond a reasonable doubt, that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense. *State v. Peters*, 94-0283, p. 8, 643 So.2d at 1225; *State v. Armstrong*, p. 4, 671 So.2d at 309; *State v. Nealy*, 450 So.2d 634, 639 (La.1984).

*State v. Williams*, 07-1407, pp. 7-8 (La. 10/20/09), 22 So.3d 867, 875-76, *cert. denied*, 560 U.S. 905, 130 S.Ct. 3278 (2010).

Defendant contends his circumstances show he could not tell right from wrong. He had a long history of mental health problems. Doctors at Greenbriar took him off his regular medication and placed him on a new one. Defendant stopped taking that medication when he returned home days before the murder. He made no attempt to harm anyone other than Tanner, who was the object of a delusion. Defendant's admission of what he did and his failure to flee or hide evidence add to the circumstances that show he could not tell right from wrong at the time of the murder and should have been found not guilty by reason of insanity.

However, the defense presented no expert testimony to opine Defendant was insane at the time of the offense. Dr. Cantu, Defendant's treating psychiatrist for some time prior to the time of the offense, was not qualified to give an opinion about Defendant's sanity at the time of the murder. The defense criticized Dr. Vosburg's testimony because he saw Defendant only once, more than two years after the murder. Dr. Vosburg admitted his opinion was only as reliable as the records and the record-takers, and he wished he "had more exacting" records.

In his appeallate brief, Defendant incorrectly argues Dr. Vosburg "saw [Defendant] as merely depressed, sleep deprived, suffering with severe mood swings, and had poor impulse control at the time [he] killed his four-year-old nephew[,]" rather than as a paranoid schizophrenic. In fact, Dr. Vosburg testified Defendant's prescribed mood-stabilizing medication indicated to him "there's an affect or a mood component . . . beyond just paranoid schizophrenia . . . . a

3

combination of schizophrenic symptoms and affective or mood symptoms." Dr. Vosburg's expert opinion was that Defendant knew right from wrong when he murdered Tanner.

The State noted Defendant was able to accurately recall events surrounding the murder shortly after it occurred and offered "an excuse" for it to his mother about an hour after it occurred. Defendant admitted he told Kristina he stabbed Tanner in the chest. He knew all the details of Tanner sleeping on the couch while John and Kristina were out of the room. He told detectives he did not think about the consequences, although he also told them he was afraid of Tanner, the knife was made available for him to stab Tanner, and Tanner was already dead but Defendant still had to kill him. The day after the murder, he asked deputies to tell Kourtney he was sorry for what he had done.

Without question, Defendant was seriously mentally ill and had been on medication for a long time. However, these facts do not automatically lead to the conclusion that Defendant did not know right from wrong at the time of the murder. Some of the bizarre reasons Defendant gave for killing Tanner – the squirrels, the light shining on the knife, etc. – did not arise until a significant time after the murder, when Defendant could have known what he would gain from a finding of insanity. However, testimony showed Defendant said he did hear voices prior to the murder, but he apparently never acted on them. Although Defendant told Kourtney she was the antichrist and her children were the spawn of Satan before the murder, he never indicated or exhibited any violent tendencies in relation to that purported belief.

In *State v. Sharp*, 418 So.2d 1344, 1348 (La.1982), the supreme court stated:

> In the present case, the evidence (particularly the medical evidence) was in substantial conflict, and there was ample evidence to support either verdict the jury decided to render. When there is

4

conflicting evidence on the issue of insanity at the time of the offense, the reviewing court should accord great weight to the jury's resolution of the conflicting evidence (as long as the jury was properly instructed and no evidence was prejudicially admitted or excluded), and the jury's verdict should not be overturned *unless no* rational juror could have found, on the evidence viewed in the light most favorable to the prosecution, that defendant failed to prove by a preponderance of the evidence his insanity at the time of the offense.

Here the evidence is not conflicting. It is the interpretation of the evidence by Defendant and by the State that conflicts. We find that the evidence was not sufficient for the jury to reject Dr. Vosburg's opinion that Defendant was not insane when he stabbed Tanner. Defendant bore the burden of rebutting the presumption of sanity at trial. The jury's finding of guilty, implying Defendant failed to carry the burden of rebutting the presumption, was not without support in the record.

The jury could have accepted *all* of the evidence of Defendant's behavior before, during, and after the murder; the factual evidence of his medical history before and after; and the medical testimony, and it still could have rationally determined by a preponderance of the evidence that Defendant was not insane at the time of the murder. Defendant did not actually refute any of the evidence; he just reached a different conclusion. Thus, we affirm Defendant's conviction.

**DECREE:**

Defendant's conviction is affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules– Courts of Appeal, Rule 2–16.3.

5