395 So.2d 664 (1981)
STATE of Louisiana
v.
William Glen ROY.
No. 80-KA-1513.
Supreme Court of Louisiana.
January 26, 1981.
Rehearing Denied March 2, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Charles B. Bice, Dist. Atty., Kermit M. Simmons, Douglas H. Allen, Asst. Dist. Attys., for plaintiff-appellee.
Kennedy & Yeager, Charles J. Yeager, Alexandria, for defendant-appellant.
*665 DIXON, Chief Justice.[*]
On February 27, 1979 at about 9:00 a. m., the defendant, a white male, left the Village Inn Restaurant in Winnfield, Louisiana and drove to some cottages located behind the restaurant, where he got out of his car and approached a young black woman who was carrying an infant and holding a child by the hand. The defendant pointed a pistol at the woman's head, shouted at her and then shot her. He returned to his car and drove around Winfield at high speed, shooting three more black people (one fatally) before he was caught by the police.
On March 6, 1979 the defendant was indicted by the Winn Parish Grand Jury for the first degree murder of Willie Sean Davis. A sanity hearing was held on May 22, 1979 at which the defendant was found incompetent to stand trial and was committed to East Louisiana State Hospital for treatment. He was given large doses of a major antipsychotic drug called Navane[1] and on September 27, 1979 he was declared capable of standing trial. He was immediately arraigned and entered pleas of not guilty and not guilty by reason of insanity. Trial began on January 28, 1980 and on January 30, 1980 the jury returned a unanimous verdict of guilty as charged. Defendant's motions for a new trial and in arrest of judgment were denied. He was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.
In this appeal the defendant does not deny he killed the victim, but contends that he was not responsible for his act because he was insane at the time it was committed. He argues that the jury verdict is contrary to the law and the evidence because he established his insanity by a preponderance of the evidence, and, therefore, the trial court erred in denying his motion for a new trial. C.Cr.P. 851(1).
In Louisiana an adult defendant is presumed to be sane and responsible for his actions. R.S. 15:432.[2] This presumption relieves the state from having to prove a defendant's sanity in all cases; a defendant who wishes to rebut the presumption must prove the affirmative defense of insanity by a preponderance of the evidence. C.Cr.P. 652.[3] To be exempted from criminal responsibility *666 on grounds of insanity, the defendant must persuade the jury that he had a mental disease or defect which rendered him incapable of distinguishing right from wrong with reference to the conduct in question. R.S. 14:14.[4] Because the determination of sanity is a factual matter reserved to the jury, derived from its evaluation of the evidence, this court has consistently refused to reverse convictions or to consider denials of new trial motions where defendants alleged that the evidence was insufficient to sustain the verdict, relying on Article 5, § 5(C) of the La.Const. of 1974[5] and C.Cr.P. 858,[6] both of which restrict this court's review in criminal cases to questions of law, only, and prohibit it from reviewing the sufficiency of the evidence.
Recently, in State v. Poree, 386 So.2d 1331 (La.1980), a case which also involved an insanity plea, a majority of this court reaffirmed that position. In its rehearing opinion, the majority acknowledged that the evidence of the defendant's sanity was weak, but found it impossible to conclude that no evidence of sanity had been presented. The majority thought it could not hold that the trial court erred in denying the defendant's motion for a new trial if there was any evidence on which the jury could have based its finding of sanity. Following its perceived constitutional mandate, the majority declared that it could consider error in the denial of a new trial motion only where a defendant contended that there was no evidence of an essential element of the crime charged, as such a contention presented a question of law rather than a question of fact. In Poree the majority found the question presented was a factual one involving evidentiary sufficiency; *667 hence the matter was excluded from review. Citing State v. Fletcher, 341 So.2d 340 (La.1976), the court declared that it had found no persuasive authority holding this limitation of review offensive to any constitutional guarantees of due process.
In our original Poree decision we recognized that the Louisiana Constitution's limitation of review to questions of law only, and to cases in which "no evidence" is offered by the state as to an essential element of the crime, assures the defendant due process in most cases. However, we also noted that the Louisiana rule may deny a defendant due process of law when he bears the burden of proving by a preponderance of the evidence an affirmative defense. In such a case the "affirmative defense of insanity would be totally devoid of meaning if the trier of fact were free to find the defendant guilty even when he proves insanity by a preponderance of the evidence." 386 So.2d 1331 at 1335.
We also stated in our original Poree opinion that the "no evidence" standard of review was in question in light of the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In Jackson, the court rejected the previous "no evidence" criterion used in federal habeas corpus review of state convictions (similar to the Louisiana procedure in that review was precluded where there was "some" evidence of the elements of the crime). The court stated that federal courts henceforth were to "consider not whether there was any evidence to support a state-court conviction, but whether there was sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." 443 U.S. at 313, 99 S.Ct. at 2786, 61 L.Ed.2d at 569. The critical inquiry in a review of the sufficiency of the evidence supporting a conviction was to be:
"... whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt...." 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.
In the court's view, the factfinder's role as weigher of evidence was preserved by considering all of the evidence in the light most favorable to the prosecution:
"... The criterion thus impinges upon `jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." 443 U.S. at 319, 99 S.Ct. at 2790, 61 L.Ed.2d at 573-574.
After some initial vacillation, reflected in the Poree decisions and other cases,[7] this court has now adopted the Jackson standard of review when evaluating allegations by defendants that the state presented insufficient evidence to prove an essential element of the crime charged beyond a reasonable doubt.[8] Due process now appears to require extension of the test to situations where the defendant pleads the affirmative defense of insanity, and claims the record evidence does not support a finding of guilt beyond a reasonable doubt.
In July of 1979 the United States Supreme Court held that the rule of Jackson v. Virginia was to be followed in reviewing the conviction of a state court prisoner who had pleaded insanity. In Moore v. Duckworth, 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979), a per curiam opinion rendered shortly after Jackson, the Supreme Court affirmed the conviction of a defendant who claimed he was denied due process because the evidence upon which he was convicted was insufficient to prove sanity beyond a reasonable doubt. The Seventh Circuit Court of Appeals had held that a challenge to the sufficiency of the evidence supporting conviction presented a due process issue only where the state court conviction was totally devoid of evidentiary *668 support. The United States Supreme Court held that the lower courts had employed the wrong standard, and that under In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) and Jackson, the state prisoner who pleaded insanity presented a federal due process issue when he claimed he was entitled to a determination whether the record evidence supported a finding of guilt beyond a reasonable doubt. The court specifically held that the Court of Appeals erroneously applied the "no evidence" rule on appeal, but also found sufficient evidence in the record to support the jury finding that the defendant was, beyond a reasonable doubt, sane at the time of the offense.
That finding cannot be made in the case before us; the jury's verdict of sanity is contrary to the preponderance of the evidence. At trial the defense presented three doctors who testified on the sanity issue. Dr. Paul D. Ware, a psychiatrist and member of the sanity commission, examined the defendant on May 5, 1979 and on August 17, 1979 and diagnosed him as a chronic paranoid schizophrenic. He believed the defendant's condition was at least six months old. At the first examination he found the defendant in an acute psychotic state, unable to evaluate what was happening around him. Dr. Ware testified that the defendant could not distinguish right from wrong; in his opinion the defendant knew what he was doing in the sense that he knew he was shooting someone, but "saw the people he was shooting as the enemy that he must destroy in the same way that a soldier overseas would see someone." Asked if the defendant knew his actions were against the law, Dr. Ware responded, "I don't think the law was even a part of his thinking at the time ... he was acting on his internal feeling, without any allowance for the law or what was going on around him."
Dr. Erle W. Harris, Jr., a psychiatrist, also examined the defendant on May 5, 1979, as a member of the sanity commission. He learned that the defendant had been hospitalized briefly in Texas for an acute psychotic disturbance and that he had been a patient at Central Louisiana State Hospital on at least five different occasions. He diagnosed the defendant's condition as paranoid schizophrenia, chronic, and of at least ten years duration. He found the defendant explosive, threatening and under the influence of dangerous delusions, markedly preoccupied with blacks and their "evil" nature. The defendant had apparently resolved to shoot an unspecified number of blacks and felt that "what he did was not something he should be guilty or ashamed ofbecause he was going to war for his country." Dr. Harris believed that the defendant could not distinguish between right and wrong when he committed the offense "because of his involvement in his mental illness. His perceptions of the people that he killed or attempted to kill ... were such that he saw them as the enemy and so there was no question of it being right or wrong to him. It was just completely part of the delusional system that he was involved in..."
Dr. Randolph Williams, coroner of Winn Parish, testified as an expert in general medicine. He had committed the defendant to Central Louisiana State Hospital in 1975 with a diagnosis of paranoid schizophrenia, and found him suffering from the same malady on the day of the crime, when he saw him in the Winn Parish jail. According to Dr. Williams, the defendant was able to form the intent to act and knew the nature and consequences of his act, but could not distinguish right from wrong. The doctor testified, "Paranoid schizophrenia is a psychosis... psychosis means one is out of touch with reality. One who is out of touch with reality is not capable of distinguishing between right and wrong ..." Dr. Williams thought that the defendant was not aware that his act was prohibited by law because he considered himself the ultimate law, "He was executing God's will."
The large doses of antipsychotic medication were cited by the physicians as evidence of the measure of defendant's state of insanity.
*669 Neither the defense nor the state presented any lay testimony on the issue of sanity. The state presented no controverting evidence, instead arguing that the defendant intended his actions, knowing that they were illegal and would result in death. The state contended that the defendant's flight from the scene of the killing and his submission to the police when his car stopped revealed his sanity and his knowledge that he had done something wrong. Such actions are not inconsistent with a state of insanity, and could not by any rational fact finder be said to overcome the overwhelming evidence of insanity. Viewing the evidence in the light most favorable to the prosecution, we conclude that the defendant established the affirmative defense of insanity by a preponderance of the evidence, and that no rational fact finder could have found him sane on the record evidence.
Defendant's motion for a new trial should have been granted. The conviction and sentence are reversed, and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.

ON APPLICATION FOR REHEARING
PER CURIAM.
The state applies for a rehearing, taking issue with the finding of this Court that defendant's motion for a new trial should have been granted and that his conviction and sentence should be reversed. The application is multi-faceted and, we determine, without merit. Nonetheless, we do note that our expression in the opinion should be clarified. When we said that Roy had proved his insanity by a preponderance of the evidence and that no rational fact finder could have found him sane on the record evidence, we meant simply that, applying Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), we determined, under the facts and circumstances of the case, that a rationale fact finder, viewing the evidence in the light most favorable to the prosecution, could not have concluded that defendant had failed to prove by a preponderance of the evidence that he was insane at the time of the offense. See also: State v. Hathorn, 395 So.2d 783 (La.1981); State v. Claibon, 395 So.2d 770 (La.1981), both decided this same day.
REHEARING DENIED.
DIXON, C. J., concurs in the denial.
BLANCHE and LEMMON, JJ., not participating.
NOTES
[*] Judges Cecil C. Cutrer, Jimmy M. Stoker and Ned E. Doucet, Jr. of the Third Circuit participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Calogero, Dennis and Watson.
[1] At trial it was brought out that the defendant was taking 80 milligrams of Navane daily, almost triple the recommended normal dose. Navane was described as an antipsychotic medication used to calm aggressive behavior and clear confused thinking.
[2] R.S. 15:432 reads in pertinent part:

"A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption ... that the defendant intended the natural and probable consequence of his act; that the defendant is innocent; that the defendant is sane and responsible for his actions ..."
[3] C.Cr.P. 652 states:

The defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence."
The official comment to the article indicates that it codifies a well settled jurisprudential rule. The appropriate standard was explained in State v. Scott, 49 La.Ann. 253, 254, 21 So. 271, 272 (La.1897):
"... The preponderance of proof is recognized as that of a character to satisfy the mind, though it be not free from reasonable doubt. This preponderating proof is enough in civil cases to authorize a finding in favor of the party...."
Louisiana is one of twenty-two states which require the defendant to persuade the jury of his insanity by a preponderance of the evidence. In the remaining twenty-eight states and in the federal system, the burden of persuasion rests with the prosecution. Once the defendant presents some evidence of insanity, the prosecution must prove his sanity beyond a reasonable doubt. If upon the whole evidence there is reasonable doubt as to the defendant's sanity, he must be acquitted. LaFave and Scott, Criminal Law, 312-313 (1972).
The Louisiana procedure has been criticized as impractical in that it requires the jury to juggle two different standards of proof, one for determining guilt or innocence, and another for determining sanity. See Comment, Insanity The Burden of Proof, 30 La.L.Rev. 117 (1969). The author also questions the constitutionality of the Louisiana rule. However, in Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), the United States Supreme Court held that an Oregon statute requiring the accused to prove his sanity beyond a reasonable doubt was constitutional and did not violate due process because the state still bore the burden of proving all the elements of the crime beyond a reasonable doubt.
More recently, in Rivera v. Delaware, 429 U.S. 877, 97 S.Ct. 226, 50 L.Ed.2d 160 (1976), the court confirmed that it was not unconstitutional to burden the defendant with proving his insanity defense by dismissing, as not raising a substantial federal question, a case in which the appellant specifically challenged the continuing validity of Leland. In Rivera the Delaware Supreme Court relied on Leland in affirming the constitutionality of a state statute requiring the defendant to prove his affirmative defense of insanity by a preponderance of the evidence.
And in Patterson v. New York, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), the court refused to overrule Leland and Rivera and upheld a New York law requiring the defendant to carry the burden of persuasion on the affirmative defense of extreme emotional disturbance. Stating that:
"... the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged ..." but "... [p]roof of the nonexistence of all affirmative defenses has never been constitutionally required ..." the court declined "... to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused...." 432 U.S. at 210, 97 S.Ct. at 2327, 53 L.Ed.2d at 292.
[4] R.S. 14:14 states:

"If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility."
This statute restates the legal test of insanity, the M'Naghten rule, which prevails in a majority of American jurisdictions. The test has been widely criticized for distorting psychiatric testimony, for relying on outmoded psychological concepts and for ineffectively selecting persons who need treatment. Nevertheless, this court has declined to substitute another test, believing that any modification or liberalization should come from the legislature. State v. Andrews, 369 So.2d 1049 (La.1979); State v. Weber, 364 So.2d 952 (La.1978); State v. Berry, 324 So.2d 822 (La.1975).
For a full discussion of the M'Naghten rule (the right-wrong test) and other tests of insanity in current use, see LaFave and Scott, Criminal Law, 268-295 (1972).
[5] Article 5, § 5(C) reads:

"Except as otherwise provided by this constitution, the jurisdiction of the supreme court in civil cases extends to both law and facts. In criminal matters, its appellate jurisdiction extends only to questions of law."
[6] C.Cr.P. 858 states:

"Neither the appellate nor supervisory jurisdiction of the supreme court may be invoked to review the granting or the refusal to grant a new trial, except for error of law."
[7] See for example, State v. Mathews, 375 So.2d 1165 (La.1979); State v. Custard, 384 So.2d 428 (La.1980) and State v. Boutte, 384 So.2d 773 (La.1980), cases in which the court used both standards of review.
[8] See State v. Harveston, 389 So.2d 63 (La. 1980); State v. Guillot, 389 So.2d 68 (La.1980); State v. Morgan, 389 So.2d 364 (La.1980).