450 So.2d 50 (1984)
STATE of Louisiana, Plaintiff-Appellee,
v.
Richard Leon GUIDRY, Defendant-Appellant.
No. CR83-834.
Court of Appeal of Louisiana, Third Circuit.
May 16, 1984.
Carla F. Chrisco, Lake Charles, for defendant-appellant.
Leonard Knapp, Jr., Dist. Atty., F. Wayne Frey, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and DOUCET, JJ.
DOUCET, Judge.
Defendant appeals his conviction for aggravated burglary alleging he proved he was insane at the time of the offense. We affirm.
On March 1, 1982, the defendant, Richard Leon Guidry, was charged by bill of information with aggravated burglary, a violation of LSA-R.S. 14:60. On June 16, 1982, a hearing was had to determine whether the defendant was mentally competent to stand trial. The trial court found that the defendant lacked the mental capacity to proceed and committed him to the Feliciana Forensic Facility, Jackson, Louisiana.
On May 11, 1983, following a second sanity hearing, the court ruled that the defendant was competent and able to assist his counsel for trial.
*51 On June 7, 1983, the defendant was tried before a jury of twelve persons who returned a verdict of guilty as charged. On June 16, 1983, the court sentenced the defendant to serve twenty-five years in a penal institute of this state. The defendant appeals his conviction alleging three assignments of error. However, two of those assignments will not be addressed as they were not briefed by the defendant on appeal.[1]
In the early morning hours of January 22, 1981, at approximately 2:30 A.M., the defendant entered the residence of Ms. Carol Isgitt in Sulphur, Louisiana. The defendant entered through a window on the dark side of Ms. Isgitt's apartment and attacked Ms. Isgitt as she sat in her bed. She had been awakened by noises in her apartment. The defendant jumped on Ms. Isgitt and grabbed her by the face and throat but she began screaming and tried to fight off his attack. During the struggle she scratched the defendant on both sides of the neck.
The attack lasted only for a moment. Frightened by her screams the defendant ran from the apartment, grabbing Ms. Isgitt's purse on his way out. Ms. Isgitt then telephoned the police and an officer was dispatched to the residence. The officer radioed a description of the intruder to all units. Meanwhile, another officer of the Sulphur Police Department had stopped the defendant for speeding and running a stop sign. The officer observed that the man he had stopped fit the description of the person who had fled from Carol Isgitt's apartment. A purse belonging to the victim was found in the cab compartment of defendant's truck. The officer then took the defendant to Ms. Isgitt's apartment where she identified him as the intruder who had attacked her. When Ms. Isgitt identified the defendant as the perpetrator, he remarked, "How could she recognize me, it was dark in there?"
The defendant was arrested and subsequently charged with aggravated burglary, a violation of LSA-R.S. 14:60. As aforementioned, the defendant was tried before a jury of twelve and found guilty as charged. Defendant appeals his conviction alleging three assignments of error, however, only one of these assignments will be addressed due to appellant's failure to brief the other issues.
The defendant argues that the trial court erred in finding the defendant guilty because the defendant proved by a preponderance of the evidence that he was insane at the time of the offense. The defendant argues that the state failed to rebut the evidence presented by the defendant and that no rational trier of fact could have concluded that defendant was sane at the time he committed the crime charged.
In Louisiana, both by statute and jurisprudence, there is a presumption that a defendant is sane and responsible for his actions. State v. Marmillion, 339 So.2d 788 (La.1976); State v. Poree, 386 So.2d 1331 (La.1980); State v. Roy, 395 So.2d 664 (La.1981); and State v. Brogdon, 426 So.2d 158 (La.1983). LSA-R.S. 15:432.
A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may nonetheless be destroyed by rebutting evidence, ... such is the presumption that the defendant is sane and responsible for ... his actions; .... LSA-R.S. 15:432.
The state is not required to offer any proof of the defendant's sanity nor is it required to offer evidence to rebut defendant's evidence. The burden of proving his insanity at the time of the commission of the offense lies solely on the defendant. LSA-C.Cr.P. art. 652.
The defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence. LSA-C.Cr.P. art. 652.
The relevant inquiry on appeal is whether the defendant adduced evidence of his *52 insanity at the time of the offense such that any rational trier of fact could have concluded that he carried the burden of proving his insanity by a preponderance of the evidence. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 [61 L.Ed.2d 560] (1979). State v. Brogdon, 426 So.2d 158 (La.1983).
The defendant asserts that both psychiatrists called as experts testified that in their opinion the defendant did not know the difference between right and wrong at the time he committed this offense. The record does not support this allegation. On cross-examination, Dr. Rathmell was asked straightforward:
Q. Dr. Rathmell, to begin at the end, you said `not realize some of the things that he was doing'. That's not the same as not being able to distinguish between right and wrong, is it?
A. No, sir.
Q. As a matter of fact, you cannot give this Court a professional psychiatric opinion that at the time this crime was committed that he was unable to distinguish between right and wrong, can you?
A. No sir, I cannot.
Dr. Gilles Morin also examined the defendant. He testified on cross-examination:
Q. And your opinion in this case was formed after, based on your experience, after a one-hour interview with the defendant, is that correct?
A. That's correct, sir.
Q. And based solely, aside from your experience, on that one-hour interview?
A. Yes, sir.
Q. And in light of your thirty years experience, the best you can do is say that it is possible that he did not know the difference between right and wrong?
A. That's correct, sir.
Thus it appears from the testimony of the two experts who testified as to the defendant's mental state at the time of the offense, that the jury could easily have concluded that the defendant failed to establish, by a preponderance of the evidence, that he was insane at the time of the offense. One expert formed his opinion of the defendant's state of mind after a one-hour interview of the defendant. The other expert, Dr. Rathmell, did not examine the defendant until June 15, 1982, almost five months after the incident took place. Moreover, she had never examined the defendant before and the results of her examination were based strictly on what the defendant told her.
The defendant also argues that the case of State v. Roy, 395 So.2d 664 (La.1981) is dispositive. This does not reflect an accurate comprehension of State v. Roy. In Roy, both experts who testified had previously committed the defendant to a state hospital and had diagnosed him as a paranoid schizophrenic. Roy, supra at 668. In the present case, the experts had never had a previous encounter with the defendant and based their opinions on a one-hour interview and on information given them by the defendant himself.
In addition, the expert testimony here was very inconclusive, as demonstrated above. The expert testimony in Roy was quite firm and a conclusive diagnosis of that defendant's mental condition was presented to the jury. Roy did not present the same situation as the present case.
However, the facts of State v. Parker, 416 So.2d 545 (La.1982) do appear to be closely analogous to this case. The doctors in Parker testified that they each examined the defendant for about an hour, that they could not say for sure what his condition was, and that they relied on information provided by the defendant. Parker, supra at 551. The expert testimony in Parker thus appears to be much like the testimony in the present case. In both Parker and the present case, the jury found the defendant guilty. In Parker, the court, after examining the expert testimony presented at trial, held:

*53 Here, the jury considered the medical evidence along with the lay testimony and the remainder of the evidence, and decided that the defendant had failed to prove by the necessary preponderance that he was insane or even intoxicated at the time of the offense.
After viewing the record, we cannot say that the jury was wrong. A rational, objective fact-finder could well have concluded that the medical testimony, while scholarly, was largely based on defendant's self-serving revelations, and that it did not support the defendant's insanity plea.
None of the testifying physicians had actually treated the defendant for any mental, emotional, or physical ailment. They were consulted only for the purpose of appearing as expert medical witnesses. Parker at 551.
We find that a rational trier of fact might well have been unconvinced by this testimony that the defendant was insane at the time of the offense. It is for the jury to consider both the expert and lay testimony given and to determine whether they believed that the defendant had successfully rebutted the presumption that he was sane at the time of the offense. State v. Parker, 416 So.2d 545, 551 (La.1982).
Lastly, we have reviewed the record and discovered no patent errors warranting reversal. State v. White, 404 So.2d 1202 (La.1981).
For the reasons assigned hereinabove, the appellant's conviction is affirmed.
AFFIRMED.
NOTES
[1] Assignments of error which are not briefed are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982); State v. Lemoine, 403 So.2d 1230 (La.1981); State v. Washington, 430 So.2d 641 (La.1983).