563 So.2d 976 (1990)
STATE of Louisiana
v.
Herbert BUTLER.
No. KA 89 1099.
Court of Appeal of Louisiana, First Circuit.
May 30, 1990.
*978 Bryan Bush, Dist. Atty., Office of the Dist. Atty., Baton Rouge, by Bert Garraway, Asst. Dist. Atty., for plaintiff/appellee.
Joseph Marcal, New Orleans, for defendant/appellant.
Before COVINGTON, C.J., WATKINS, J., and DOHERTY, J. Pro Tem[*].
COVINGTON, Chief Judge.
Herbert Butler was indicted for the second degree murder of Michelle Y. Poche, in violation of LSA-R.S. 14:30.1. He entered *979 the dual plea of not guilty and not guilty by reason of insanity. After trial by jury, defendant was convicted as charged. The trial court imposed the mandatory penalty of life imprisonment, without benefit of probation, parole, or suspension of sentence. He appealed, urging fifteen assignments of error. Assignments of error one, two, three, four, nine, ten, and eleven were specifically abandoned.

FACTS
The victim of the instant offense was defendant's former girlfriend. Defendant met Ms. Poche at Southern University, and they were both students at the time of the incident. The couple frequently quarrelled during their lengthy relationship. Defendant testified that, on at least three occasions, he moved into her residence; and each time he moved out, believing she was involved with other men. At the time of the victim's death, they had been separated for several months. According to his testimony, defendant had resolved to move away from the area and attend school elsewhere.
Poche was shot at close range as she was seated in her car, apparently attempting to flee from defendant. She died as the result of massive blood loss caused by five gunshot wounds.
The shooting occurred in the parking lot of her apartment complex. Defendant confronted the victim and her escort, Anthony Druilhet, as they walked to the door of her apartment. Druilhet testified that he recognized defendant from a photograph that the victim had shown him. When defendant approached the couple, Poche said, "What are you doing here, Herbert? I don't want any trouble." Defendant ran to the nearby shrubbery and pulled out a rifle hidden there. Druilhet related that he immediately fled on foot and that he believed the victim was with him. From across the street, he heard a car ignition start, followed by several gun shots. When he returned to the parking lot of the victim's apartment, he saw that her car had moved a few feet and that she was slumped over in the front seat. Butler was no longer in the vicinity.
Druilhet went to a neighboring apartment to summon help. When the police arrived, he named defendant as the victim's assailant. Several hours later, he identified Butler from a physical lineup.
Defendant testified on his own behalf. He claimed that he had gone to the victim's apartment to tell her that he was leaving town. He testified that he saw Druilhet reach into his car; and, therefore, he went to his car and retrieved his gun. He claimed that he did not know that he hit anyone, but he shot the gun in self-defense.

EXCLUSION OF TESTIMONY
By assignments of error five and seven, defendant complains of the trial court's rulings restricting his examination of two witnesses. In assignment of error number five, he submits that the trial court erred by sustaining the state's objection to a question concerning his state of mind shortly after the shooting. In assignment of error number seven, defendant argues that the court erred by refusing to permit him to ask a witness his opinion of the relationship between defendant and the victim.
Assignment of error number five is concerned with the testimony of Namon Harris, a witness for the state, who had worked with the defendant for approximately two years. Harris testified that defendant came to his apartment in the early morning hours of the day after the shooting and told him, "I got in trouble with a gun." Harris claimed that Butler initially did not tell him many of the details of his difficulty; rather, he asked a number of questions concerning possible future actions. Unable to provide the information defendant sought, Harris and Butler called another co-worker, Kevin Guillory. When Guillory and Harris attempted to determine the seriousness of the incident, defendant repeatedly told them that he did not know. However, he admitted that he went to the victim's apartment and saw her with another man; that he saw the man reach into the car to retrieve an object, so he returned to *980 his car and got his gun; and that he shot the gun, but he did not know whether or not he hit anyone.
On cross-examination, Harris repeated that defendant was aware that he had fired the gun but did not know whether or not he hit anyone. Defense counsel then asked him, "Is it safe to say that he was basically in a trance?" The state objected on the grounds that the witness had no way of determining whether or not defendant was in a trance, and the court sustained the state's objection. Thereafter, through specific questions, defense counsel elicited Harris's opinion that defendant was thought by his fellow workers to be a fun, easy-going person who enjoyed joking with the persons with whom he worked; however, on the night of the shooting, he acted quite differently. The following exchange then occurred:
Q. Now, when you gave a statement to the police that night, didn't you tell them that you thought Herb was in a trance?
A. When II thoughtwhen I looked at Herb I could tell he wasn't the same guy that he used to be when hehe wasn't the same guy that when I would see him that time in the morningwhen I would see Herb in the mornings it was always a laughing and a joking and nicknaming me or saying something to me that made me laugh or something to get the day through or at break we would all go up to the upstairs to, it's like a candy machine or something, and Herb always had something funny to say to make theto make the time pass, so I could relate to that incident and the time that he walked into my bedroom that it was two different Herb Butlers.
Defendant contends that the court erred by sustaining the state's objection because the testimony was admissible pursuant to LSA-C.E. art. 701, authorizing the introduction of opinion testimony by lay witnesses. He contends the evidence was relevant to his defense of insanity, and the court's ruling prevented him from introducing evidence critical to that defense.
LSA-C.E. art. 701 provides for the admission of opinion testimony by lay witnesses, as follows:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
LSA-C.E. art. 103 further provides, in pertinent part, as follows:
A. Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
* * * * * *
(2) When the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel.
Initially, we note that, at the time of the objection, defense counsel did not make the substance of the excluded testimony, that is, Harris's opinion, known to the court. Thus, we are unable to determine whether or not the witness actually would have testified as defendant claimed.
However, even if we were to assume Harris would have testified that he believed defendant was in a trance after the shooting, we doubt that his opinion would have been helpful to the determination of the issue of defendant's sanity in this case, as necessary for admission under Article 701. Harris previously testified that defendant drove to his apartment and walked and talked clearly. He asked questions concerning the repercussions of his actions, and he even drank beer with his co-workers while he discussed the incident. He was able to relate the events which led up to the shooting. Therefore, even if he would have testified that defendant acted as though he were in a trance, that opinion would not have prompted a clear understanding of defendant's sanity in light of his specific testimony relating non-abstract *981 behavior which did not support that conclusion.
In order to make its determination of defendant's sanity, the jury was presented with specific examples of how defendant's actions differed from his normal behavior through the questions and answers that followed the court's ruling. Further, Harris was permitted to present his impression of defendant's behavior to the jury. On cross-examination, he was questioned about whether or not he told the investigating officers that defendant appeared to be in a trance; and Harris responded that he told the officers that, "When I looked at Herb I could tell he wasn't the same guy... it was two different Herb Butlers." Thus, defendant essentially presented the substance of the testimony to the jury; and no substantial right was affected by the court's ruling. See LSA-C.E. art. 103. Accordingly, we find no merit to this assignment of error.
In assignment of error number seven, defendant submits that the trial court erred by sustaining the state's objection to the question through which he sought to obtain a witness's opinion as to whether or not the defendant's relationship to the victim was unusual. Defendant called Joe Collier, a bail bondsman, to testify on his behalf. Collier testified that the victim called him several times after defendant was arrested December 23, 1987, for the burglary of the victim's apartment and that she furnished money for his bond. On cross-examination by the state, Collier indicated that it was not unusual for a girlfriend to post bond for her boyfriend. Thereafter, on redirect examination, defendant asked, "Would you consider this case compared to the other cases you've seen unusual?" The state objected because defendant had failed to define "unusual," and the court agreed that the foundation was insufficient.
Defendant claims Collier's opinion testimony was important to establish the unusual nature of the relationship between defendant and the victim, which was important to support his defense of insanity. He contends the information was admissible under LSA-C.E. arts. 701 and 704 as the opinion of a lay witness.
As previously noted, article 701 permits the introduction of opinion testimony by a lay witness only if such opinion is rationally based on the perception of the witness and is helpful to a clear understanding of his testimony or to the determination of a fact in issue. A defendant is presumed to be sane at the time of the offense. La.R.S. 15:432. In order to establish that he should be exempt from criminal responsibility, the defendant must show that, because of a mental disease or defect, he was incapable of distinguishing between right and wrong with reference to the conduct in question. LSA-R.S. 14:14. Louisiana does not recognize the doctrine of diminished responsibility. State v. Burton, 464 So.2d 421, 427 (La.App. 1st Cir.), writ denied, 468 So.2d 570 (La.1985).
Although defendant contends the information was relevant to his defense of insanity, we find no manner in which the witness's personal opinion of defendant's relationship with the victim as it existed several months prior to the commission of the offense could have assisted the trier of fact in its determination of defendant's ability to distinguish between right and wrong at the time in question. Accordingly, we find no error in the court's ruling.
In any event, the jury was presented with ample evidence of the tempestuous relationship between defendant and the victim. In addition, Collier related the specific facts upon which his opinion was based; and the jury was able to infer the nature of the relationship from those facts. Therefore, we find that, even if the court's ruling were erroneous, no substantial right of the accused was affected. See LSA-C.E. art. 103. Thus, any resulting error was clearly harmless; and we find no merit to this assignment of error.

EXPERT OPINION TESTIMONY
By assignments of error six and thirteen, defendant complains of the trial court's rulings excluding opinion evidence by an expert defense witness and permitting the *982 state's expert witness to offer his opinion on the same issue. In assignment of error number six, defendant submits that the trial court erred by sustaining the state's objection to a question he propounded to Dr. Marc Zimmerman concerning his ability to distinguish between right and wrong at the time of the offense. In assignment of error number thirteen, defendant contends that the court erred by permitting the state to ask the same question of Dr. Hypolite Landry.
Dr. Marc Zimmerman, a psychologist, was called as a defense witness. Dr. Zimmerman testified that he had examined defendant and had determined that, at the time of the incident, "he moved across the line from sanity into insanity." Dr. Zimmerman further testified that defendant had "decompensated into a state where he lost contact with reality, a psychotic state, and I had never put a diagnosis on it, but some form of schizophrenia from what he described." When defense counsel asked him whether or not defendant was aware of social structures, morals, or values, Dr. Zimmerman testified that he was not aware of them; that because of his rage he had "literally lost contact with reality" so that "he was not able to say wait a second, this is wrong according to what I was taught in Sunday school or what the law says or whatever."
Thereafter, defense counsel questioned Dr. Zimmerman as follows:
Q. And at that point he was unable really to premeditate or to understand really the effects of what he's doing in a legal sense at least, is that
The state then objected on the grounds that the question called for an opinion on a question of fact to be determined by the jury; and the court sustained the objection. Defendant contends the court erred by excluding the testimony because Dr. Zimmerman was effectively prevented from rendering an expert opinion on the issue of sanity.
In assignment of error number thirteen, defendant complains that the trial court erred by permitting the state to obtain Dr. Landry's opinion of whether or not defendant could distinguish between right and wrong at the time of the offense. The court appointed a sanity commission after defendant entered his insanity plea. Dr. Landry was a member of that commission; and he examined defendant approximately six months after the shooting. Dr. Landry testified that he was asked to determine whether or not defendant was able to understand the charges against him; if he would be able to assist his counsel in his defense; and, if possible, to determine whether or not defendant was able to distinguish between right and wrong at the time of the offense. The state questioned him as follows:
Q. Particularly as to the third thing you listed that the judge was interested in in your examination of Mr. Butler as to his sanity at the time of the commission of the offense on May 11, 1988, as to the legal definition of sanity of his ability at that time to determine right from wrong
A. Yes, sir.
Q. What was your conclusion?
Defendant objected on the grounds that the state's question embraced an ultimate issue to be decided by the jury; and the court overruled defendant's objection, indicating that it did so because of the freedom allowed during the questioning of Dr. Zimmerman. Thereafter, Dr. Landry responded as follows:
I have no reasonI have no reason to believe that he did not know right from wrong on that day. As I stated, I didn't elicit a history of a psychosis on that day which would render him incapable of doing that or on any other day.
Defendant now complains that the court unduly restricted his examination of Dr. Zimmerman by refusing to permit him to answer whether or not defendant knew what he was doing "in a legal sense." He claims that the court's order was compounded by the ruling permitting the state to obtain Dr. Landry's opinion on the same issue.
Evidence pertaining to the defense of insanity at the time of the offense may be introduced at the trial by both the defense *983 and by the district attorney. See La.C.Cr.P. art. 653. However, the defendant has the burden of establishing the defense of insanity at the time of the offense by a preponderance of the evidence. La.C.Cr.P. art. 652. The issue of defendant's insanity at the time of the commission of the offense is a fact question reserved for the jury. State v. Daigle, 344 So.2d 1380, 1384 (La.1977).
LSA-C.E. art. 702 provides for testimony by expert witnesses, as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
LSA-C.E. art. 704 further provides as follows:
Testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact. However, in a criminal case, an expert witness shall not express an opinion as to the guilt or innocence of the accused.
Defendant argues that his question to Dr. Zimmerman was an admissible question embracing, but not directly determining, an ultimate issue. He contends that, under State v. Birdsong, 452 So.2d 1236 (La.App. 2nd Cir.), writ denied, 457 So.2d 1200 (La. 1984), he was entitled to present expert testimony regarding defendant's legal sanity, the ultimate issue to be decided by the trier of fact.
In State v. Birdsong, the defendant claimed that the trial court erred by permitting an expert witness to express an opinion as to an ultimate issue of fact, that is, whether or not the defendant was capable of distinguishing right from wrong with reference to the conduct in question. Therein, the Second Circuit considered the earlier jurisprudence of the Louisiana Supreme Court in which that Court noted that expressions of opinion relating to the guilt or innocence of the accused were improper. The Second Circuit reasoned that the subject matter at issue in the earlier cases related to matters that were well within the understanding of the average layman and, therefore, opinion testimony would not provide assistance to the jury in reaching a decision. The Court further found, however, that the expert evidence of the psychiatrist and psychologist which the State sought to introduce would have aided the trier of fact because the average layman would not have been able to interpret the various psychological tests at issue; and each expert was shown to have sufficient knowledge and skill in his field. The Court concluded, therefore, as follows:
By offering their opinion of whether the defendant could distinguish between right and wrong at the time of the crime, the experts were not usurping the function of the jury. The jury is free to reject the expert's opinion and accept some other view or determine for themselves the conclusions to be drawn from the evidence.
452 So.2d at 1243.
Herein, defendant contends that he was entitled to present Dr. Zimmerman's expert opinion as to defendant's sanity at the time of the offense. Defendant essentially claims, therefore, that he was entitled to present Dr. Zimmerman's opinion that defendant was not guilty by reason of insanity.
However, we do not find that State v. Birdsong is authority for the introduction of this type of opinion evidence. In Birdsong, the Court simply approved the introduction of expert testimony regarding whether or not the accused could distinguish between right and wrong at the time of the offense. The Louisiana Supreme Court previously had found that such information could be obtained even from lay witnesses. See State v. Lott, 325 So.2d 576 (La.1976). Although the Court approved the introduction of medical testimony relating to the defendant's mental capacity, it did not authorize the introduction of opinion evidence relating to the legal issues by a medical expert.
*984 Moreover, we note that State v. Birdsong was decided prior to the effective date of La. Acts 1988, No. 515, the Louisiana Code of Evidence. Article 704, set forth above, specifically provides that "in a criminal case, an expert shall not express an opinion as to the guilt or innocence of the accused." Testimony that the accused could not understand the significance of his actions "in a legal sense" essentially would have presented Dr. Zimmerman's opinion to the jury that defendant was not guilty by reason of insanity.
We find, therefore, that defendant sought to introduce opinion evidence relating to the ultimate issue involved herein; and that opinion would have impinged upon the jury's role as the trier of fact. See State v. Wheeler, 416 So.2d 78 (La.1982). Article 704 provides that an accused in a criminal case is entitled to present expert testimony "embracing" an ultimate issue only if that testimony does not encompass an opinion as to guilt or innocence. Dr. Zimmerman related his opinion of defendant's ability to determine right from wrong at the time of the offense. However, the jury was charged with determining whether or not defendant knew what he was doing "in a legal sense," and Dr. Zimmerman's opinion as to that issue was unnecessary and unwarranted. Thus, we find no error in the court's ruling.
However, we find some merit to defendant's argument that the court erred by overruling his objection to the state's question of Dr. Landry. The state sought his conclusion as to whether or not defendant met the legal definition of sanity with regard to his ability to determine right from wrong; and that question also embranced an ultimate issue to be decided by the trier of fact. However, as previously noted, Dr. Zimmerman testified only that he believed defendant could not distinguish between right and wrong at the time of the offense; he was not permitted to testify whether or not defendant was unaware of his actions "in a legal sense." It would have been improper for Dr. Landry to testify that defendant was legally sane at the time of the murder; and the court erred by determining that the state's question was permissible in light of defendant's questioning of Dr. Zimmerman.
Nevertheless, although the state's question improperly sought his opinion of defendant's legal sanity, Dr. Landry's response did not provide impermissible opinion testimony. Rather, he answered the state's question asking for his opinion of defendant's ability to determine right from wrong with relation to the legal definition of sanity by stating that he had no reason to believe that defendant did not know right from wrong on that date. Therefore, although Dr. Landry's testimony approached the ultimate issue, it went no farther than Dr. Zimmerman's testimony that defendant had lost contact with reality and "he was not able to say wait a second, this is wrong according to what I was taught in Sunday school or what the law says or whatever." We find, therefore, that Dr. Landry's testimony did not present an impermissible statement regarding his opinion of the ultimate issue to be decided by the trier of fact. Thus, although the court's action overruling defendant's objection was erroneous, such error was clearly harmless in light of the response obtained. See LSA-C.E. art. 103; La.C.Cr.P. art. 921.

EXCLUSION OF HEARSAY TESTIMONY
By assignment of error number eight, defendant submits that the trial court erred by sustaining the state's objection to a question he propounded to defense witness Michael Robinson. Defendant argues that the court should not have instructed Robinson that he could not disclose what other people had told him because that testimony was necessary to support defendant's insanity defense.
Robinson related an incident that had occurred approximately nine months before the shooting. He testified that he worked with defendant and that he and defendant lived in the same apartment complex. Early one morning, he heard the sound of glass breaking; and, as he looked out his window, he saw the victim and a man run from the building. Robinson testified that *985 he was sure that the victim was the culprit because he had met her through defendant and had seen her on several prior occasions; and he also recognized her car.
When defendant returned and discovered the broken glass, he asked Robinson if he knew who had done it. The state then requested the court to instruct the witness that he could not testify as to what defendant or anyone else told him. The state's objection was not directed to a specific question; rather, it was in anticipation of further testimony by Robinson concerning his knowledge of the vandalism of defendant's apartment.
Defense counsel did not object to the court's ruling. Subsequently, he asked Robinson if the witness had informed defendant what he had seen; and Robinson testified that he had done so.
Defendant now claims the court erred by instructing the witness that he could not disclose what defendant or anyone else told him because such testimony would be hearsay. He claims that he was attempting to establish facts through Robinson's testimony which tended to support his insanity defense by illustrating the nature of defendant's relationship to the victim; and, therefore, the testimony was not hearsay.
As previously noted, LSA-C.E. art. 103 provides that error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected; and, if the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel. Herein, the state did not object to a specific question asked of the defense witness; and the court simply instructed the witness that he could not relate hearsay evidence. Defendant did not make a record of evidence which he felt was improperly excluded; and, therefore, there is nothing for this Court to review.
Moreover, even if we were to assume that the excluded testimony included defendant's response to the knowledge that the victim had vandalized his apartment, we find no merit to this assignment of error. Initially, we note that the insanity defense relates to defendant's ability to distinguish between right and wrong at the time of the offense with regard to the conduct in question. We doubt that defendant's verbal response to an incident that occurred some nine months before the incident in question would have greatly assisted the trier of fact in its determination of defendant's legal sanity at the time of the offense.
In any event, we find no error in the trial court's instruction to Robinson to refrain from relating what defendant or anyone else had told him. Defendant contends the testimony would not have been hearsay under LSA-C.E. art. 801(D)(1)(b), which provides as follows:
D. Statements which are not hearsay.
A statement is not hearsay if:
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

* * * * * *
(b) Consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive; ...
We find no applicability of this section to the testimony at issue. As previously noted, defendant did not make the substance of the excluded testimony known at trial; nor does defendant's brief set forth the substance of the testimony he claims was improperly excluded. Again, we must assume that he claims that Robinson should have been permitted to relate defendant's reaction to the information that the victim had broken his window. However, defendant specifically claims that the evidence was to be offered to support his claim of insanity; and, therefore, it clearly was not offered to rebut a charge of "recent fabrication or improper influence or motive." We note, as well, that defendant had not testified at the time of Robinson's testimony; and, thus, the court could not have found the testimony admissible under this provision.
Defendant also contends that LSA-C.E. arts. 701 and 704 further support the introduction *986 of this type of testimony and that the court should have permitted him to introduce the testimony as an "excited statement" under article 803(2).
We find no merit to these claims. Articles 701 and 704, discussed in conjunction with defendant's first argument, are concerned with opinion testimony by lay witnesses and opinion evidence concerning the ultimate issue of the trial. The ruling of which defendant complains relates to the introduction of hearsay testimony. The record does not reflect that defendant sought an opinion of this witness; nor that such opinion, if sought, would have been admissible, whether with regard to the ultimate issue of the trial or any other issue.
Similarly, we find no merit to defendant's claim that his reaction to the news that the victim had vandalized his apartment was an admissible "excited utterance." Initially, we note that, since defendant failed to make known the substance of the excluded testimony, this Court is unable to review the statement even to determine whether or not it was an excited utterance. However, we note that only relevant evidence is admissible at trial. See LSA-C.E. art. 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
As previously noted, defendant's reaction to an incident which had occurred approximately nine months before the shooting was, at best, of minimal relevancy to the determination of defendant's sanity.
We find, therefore, that the court did not err by instructing the witness to refrain from disclosing what defendant or anyone else had told him. This assignment or error has no merit.

JURY CHARGES
In assignments of error twelve and fifteen, defendant complains of the court's instructions to the jury and the court's refusal to include a transcript of the charges in the appellate record. By assignment of error number twelve, defendant submits that the court erred by refusing to give two special requested charges. By assignment of error number fifteen, defendant complains that, because the court refused to order the charges transcribed, this Court cannot properly review the instructions to determine whether or not the requested charges should have been given.
Defendant's trial attorney prepared the designation of record for appeal purposes. Thereafter, his trial counsel withdrew; and his present attorney enrolled as counsel of record.
In conjunction with his motion to enroll as counsel of record, defendant's appellate counsel submitted a supplemental designation of the record, including a request for a transcription of the voir dire, the opening and closing remarks of the attorneys, and the court's instructions. The court denied defendant's supplemental designation, noting that no errors had been assigned in the portions of the transcript sought and that "[a]ll parts of the record for which error (sic) were anticipated have been transcribed."
Defendant correctly argues that the trial court's refusal to order that the jury instructions be transcribed was erroneous. Although the court denied the motion on the ground that no errors had been assigned in the additional portions of the transcript defendant requested, defendant clearly objected to the court's proposed instruction on flight. Therefore, the court's refusal to authorize transcription of the jury charges because it did not anticipate errors in the instructions was incorrect.
However, an appellate court may designate additional portions of the transcript of the proceedings which it feels are necessary for full and fair review of the assignment of errors. La.C.Cr.P. art. 914.1(D). Since defendant timely objected to the court's instructions and properly designated the instructions for appellate review, this Court ordered that a transcription of the court's instructions be included in the appellate record. Thus, defendant's assignment of error number fifteen is now moot.
*987 Defendant claims that the court erred by refusing to give two special requested jury instructions. Defendant provided three proposed special instructions to the court; two of the instructions concerned the offense of manslaughter, and the third instruction concerned the weight to be given to the defendant's flight in relation to his insanity defense. The state's special instruction regarding the flight of the accused was concerned with the weight it should be given in consideration of defendant's guilt. At a conference outside of the presence of the jury, the court accepted one of defendant's special charges; and it agreed to incorporate the state's charges in its general charges. Defendant objected, arguing that his special request qualified the state's request on the issue of flight.
Defendant now complains that the court erred by refusing to give both of his charges relating to the offense of manslaughter and the elements of proof thereof, as well as his charge relating to flight. However, the transcript of the charge conference reflects that defendant objected only to the court's refusal to charge the jury concerning the weight to give defendant's flight in determining his legal sanity. "A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error." La.C.Cr.P. art. 801. Because defendant failed to object to the court's refusal to give his charge concerning the level of proof of a defense of manslaughter, he is precluded from urging as error the court's refusal to incorporate his special charge.
Defendant's special charge concerning the inferences to be drawn from the flight of the accused was as follows:
Flight from the scene of the killing and submission by the defendant to the police are actions that are not inconsistent with the state of insanity and are not sufficient in [and] of themselves to overcome evidence of insanity. State v. Roy, 395 So.2d 664 (La.1981).
The court charged the jury on flight and insanity as follows:
If you find that the defendant fled immediately after a crime was committed or after he was accused of a crime, flight alone is not sufficient to prove that the defendant is guilty. However, flight may be considered along with all other evidence. You must decide whether such flight was due to consciousness of guilt or to other reasons unrelated to guilt.
In this case, the defendant has entered a plea of not guilty and not guilty by reason of insanity. Because of such a plea, you must first determine whether the defendant committed the offense charged or an offense responsive thereto; that is, consider whether he committed second degree murder. If not, then you consider whether he committed manslaughter, and unless you find beyond a reasonable doubt that the defendant committed the offense charged or an offense responsive thereto, you must find the defendant not guilty.
If you find beyond a reasonable doubt that the defendant committed the offense charged or an offense responsive thereto, then you must determine whether he was insane at the time the offense was committed.
The defendant has the burden of proving his insanity at the time of the commission of the offense by a preponderance of the evidence. Thus, the defendant must establish that it is more probable than not that he was insane at the time of the commission of the crime.
Insanity at the time of the commission of the crime exempts the offender from criminal responsibility. If the circumstances indicate that because of a mental disease or a mental defect that the defendant was incapable of distinguishing between right and wrong with reference to the conduct in question, the defendant must be found not guilty by reason of insanity.
In determining the question of the sanity or insanity of the defendant at the time of the commission of the offense, you must consider all of the evidence bearing on the defendant's witnesses and *988 the conduct and actions of the defendant. Thus, if you find, number one, that the state proved beyond a reasonable doubt that the defendant did commit the offense charged or a responsive offense; and, number two, that the defendant established by a preponderance of evidence that he was unable to distinguish right from wrong with respect to the conduct in question at the time of the offense, then your verdict must be not guilty by reason of insanity.
The court is required to charge the jury as to the law applicable to the case. La.C. Cr.P. art. 802. La.C.Cr.P. art. 807 provides that both the state and the defendant have the right to submit special written charges for the jury. Article 807 further provides as follows:
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
Defendant claims that this instruction was wholly correct, was not in need of qualification, and is an accurate statement of the law as set forth in State v. Roy, 395 So.2d 664, 669 (La.1981). We do not agree, however, that defendant's instruction was wholly correct. All of the evidence, including the conduct and action of the defendant, should be considered by the jury in determining sanity. State v. Heath, 447 So.2d 570, 575 (La.App. 1st Cir.), writ denied, 448 So.2d 1302 (La.1984). Clearly, evidence that defendant fled the scene was a factor for the jury to consider in determining his sanity. See State v. Pravata, 522 So.2d 606, 614 (La.App. 1st Cir.), writ denied, 531 So.2d 261 (La.1988).
In State v. Roy, the Louisiana Supreme Court considered the sufficiency of the evidence supporting the first degree murder conviction of an accused who had entered the dual plea of not guilty and not guilty by reason of insanity. Therein, the expert testimony presented by defendant consisted of the opinion evidence of three physicians, including two psychiatrists (both of whom were members of the sanity commission appointed by the court), as well as the coroner of the parish. Each of the doctors agreed that the defendant was unable to distinguish between right and wrong when he committed the offense. No lay evidence concerning the sanity issue was presented. The state did not present controverting expert testimony, arguing instead that defendant's flight from the scene and submission to the police were indicative of his sanity and his awareness that his actions were wrong. In reviewing the conviction, the Court found that the evidence overwhelmingly indicated that the accused was insane. With regard to the state's arguments, the Court found that "[s]uch actions are not inconsistent with a state of insanity, and could not by any rational fact finder be said to overcome the overwhelming evidence of insanity." 395 So.2d at 669. Thus, defendant's proposed instruction was clearly taken out of context and was not a wholly accurate statement of the law.
We find, therefore, that the court did not err by refusing to give defendant's proposed instruction because it required qualification. Although the jurors were instructed that they must consider "all of the evidence bearing on the defendant's witnesses and the conduct and actions of the defendant" in order to determine whether he was sane or insane at the time of the commission of the offense, the jury could have inferred from defendant's proposed charge that flight could not be considered evidence of sanity. In order to present a wholly accurate statement of the law, the court would have had to charge the jury that defendant's flight could be considered evidence of sanity; however, if the jury found the other evidence of defendant's insanity overwhelming, evidence of flight alone could not overcome such evidence.
In any event, the ruling of the trial court on an objection to a portion of his charge to the jury will not be disturbed unless the disputed portion, when considered in connection with the remainder of the charge, is shown to be both erroneous and prejudicial. State v. Butters, 527 So.2d 1023, 1028 (La.App. 1st Cir.1988). *989 The record reflects that defendant relied on expert testimony and the history of his relationship with the victim to support his claim of insanity; and, in that context, he clearly did not rely on evidence of his flight to establish that defense. Therefore, we find that, even if the court's refusal to give the charge as proposed was error, defendant was not prejudiced by the court's ruling.

SUFFICIENCY OF THE EVIDENCE
By assignment of error number fourteen, defendant submits that the evidence is not sufficient to sustain the verdict of second degree murder. He claims that the state's expert testimony failed to rebut his evidence of insanity.
The state bears the burden of proving beyond a reasonable doubt each element of the crime necessary to constitute the defendant's guilt. LSA-R.S. 15:271. However, the defendant is presumed sane at the time of the offense. LSA-R.S. 15:432. The defendant has the burden of proving his insanity at the time of the offense by a preponderance of the evidence. LA.C.Cr.P. art. 652; State v. Weber, 364 So.2d 952, 956 (La.1978). In order to establish that he should be exempt from criminal responsibility, the defendant must show that because of a mental disease or mental defect he was incapable of distinguishing between right and wrong with reference to the conduct in question. LSA-R.S. 14:14.
The question of whether or not defendant has proved his insanity and should not be held responsible for his actions is one for the jury. State v. Pravata, 522 So.2d at 614. When a defendant who affirmatively offered the defense of insanity claims that the record evidence does not support a finding of guilty beyond a reasonable doubt, the standard for review by an appallate court is whether or not any rational fact finder, viewing the evidence in the light most favorable to the prosecution, could conclude that defendant had not proved by a preponderance of the evidence that he was insane at the time of the offense. State v. Claibon, 395 So.2d 770, 772 (La.1981).
We find no merit to defendant's claim that he established his insanity by a preponderance of the evidence. Anthony Druilhet testified that defendant apparently had hidden a gun in the shrubbery near the victim's apartment, indicating that he could have planned the offense. The victim was shot several times through the window of her car with a weapon fired at close range, also indicative of a deliberate, planned offense. After the incident, defendant immediately left the scene, disposing of crucial evidence. In the hours that followed, defendant was able to rationally relate the events that had transpired; and he retained sufficient presence of mind to question his friends about possible courses of action. Although Dr. Zimmerman, defendant's expert witness, testified that defendant slipped from a state of sanity into a state of insanity, and then returned to a sane state, Dr. Landry testified in rebuttal that he believed it unlikely that a completely normal person could deteriorate to a state of insanity and recover within a few hours. He indicated that he believed defendant did not have a history of mental instability because he had never sought treatment, and no one had ever sought treatment on his behalf. Dr. Landry further testified that the personality disorder which Dr. Zimmerman related did not equate to a finding of psychosis and that he had no reason to believe defendant did not know right from wrong at the time of the offense.
The state also presented the rebuttal testimony of Dr. Frank Silva, a psychiatrist who examined defendant several months after the offense. Dr. Silva related that defendant was not psychotic at the time of his examination and that he had detected no signs of "significant psychopathology" in defendant's history.
We find, therefore, that a rational trier of fact could have found that defendant failed to establish his insanity at the time of the offense by a preponderance of the evidence. Therefore, we find no merit to this assignment of error.
*990 For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judge Lewis S. Doherty, III, retired, is serving as judge pro tem by special appointment of the Louisiana Supreme Court to fill the vacancy created by the temporary appointment of Judge Melvin A. Shortess to the Supreme Court.