KLIEBERT, Chief Judge.
The defendant, Melvin Jenkins, was charged by Bill of Information on October 19, 1990, with aggravated battery, a violation of LSA-R.S. 14:34. At arraignment on November 27, 1990, he entered a plea of not guilty and not guilty by reason of insanity pursuant to Louisiana Code of Criminal Procedure Article 552(3). The defendant was declared incompetent to stand trial on January 17, 1991, as a result of a sanity hearing conducted on that date. Defendant was later declared competent to proceed on April 18,1991 and again on May 16, 1991.
Trial by jury was conducted on July 18, 1991. The jury of six, by unanimous verdict, found Jenkins guilty as charged. The defendant was sentenced on October 8, 1991, to thirty (30) months in parish prison, with credit for time served and with the stipulation that upon release he was to remain on active probation for a period of five (5) years.
A condensed version of the facts is as follows: On October 8, 1990 Jefferson Parish Sheriff’s deputies responded to a disturbance call at the Colonial Luxury Apartment Complex. After a brief investigation, the officers ordered the defendant, Melvin *794 Jenkins, and the victim, Calvert Durapau, to stay away from each other. According to eyewitness testimony, even as the police officers were departing, the argument resumed. Soon thereafter, the victim ascended the stairs toward defendant’s apartment purportedly to retrieve a tool box from yet another neighbor. As the victim attempted to pass defendant’s open apartment door, the argument again flared, this time accompanied by physical violence. During the fight, the defendant stabbed the victim once in the back causing immediate and permanent paralysis.
The police were again summoned. Upon arrival, Officer Pomes stated that he found the victim prone and bleeding on the steps of the complex. Appellant Jenkins volunteered that “I stabbed him.” Upon verbal request from Pomes, appellant retrieved the knife and surrendered it to him. Officer Jeff Verdin, the investigating officer, placed appellant in the squad car and, after examining the crime scene, advised him of his rights and obtained a statement. Within the verbal statement was a description of the fight and previous events which culminated in the stabbing.
After trial on the merits, the defendant appellant was found guilty as charged, as detailed above, by unanimous jury verdict. Appellant timely filed a motion for a new trial and for a post judgment verdict of acquittal alleging that the jury verdict was contrary to the law and evidence in that the jury failed to find Jenkins legally insane at the time of the crime. Both motions were denied by the trial court and from that judgment defendant appeals. For the reasons hereinafter stated we affirm the conviction, set aside the sentence and remand for resentencing.
The first assignment of error presents the question to be resolved on appeal of whether the trial judge erred in denying the defendant’s Motion for New Trial and Motion for Post Judgment Verdict of Acquittal, both of which pleadings maintain that Jenkins should be acquitted because it was proven at trial by a preponderance of the evidence that Jenkins was legally insane at the time he stabbed Dura-pau, and that consequently the jury verdict should have been not guilty by reason of insanity.
Our law concerning the burden of quantum of proof required in a prosecution in which the accused pleads the affirmative defense of not guilty by reason of insanity is settled, and can be summarized as follows. In this jurisdiction an adult accused of a crime is presumed to be sane and responsible for his actions. R.S. 15:432. Under Code of Criminal Procedure Article 652, an accused who wants to rebut this presumption of sanity must prove the affirmative defense of insanity by a preponderance of the evidence. According to R.S. 14:14, in order to avoid criminal responsibility for the offense he has committed on the grounds of insanity he must establish that at the time of the crime he was unable to distinguish between right and wrong because of a mental disease or defect. In assessing a claim of insufficiency of evidence to convict in a case involving a defense of insanity, a reviewing court must apply the test set out in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to determine whether, viewing the evidence in the light most favorable to the prosecution, any rational fact finder could have found beyond a reasonable doubt that the accused had not proven by a preponderance of the evidence that he was insane at the time of the offense. State v. Nealy, 450 So.2d 634 (La.1984); State v. Thompson, 429 So.2d 862 (La.1983); State v. Roy, 395 So.2d 664 (La.1981). Further, the reviewing court must bear in mind that it is for the jury to consider both expert and lay testimony in determining whether they believe the accused successfully rebutted the presumption that he was sane at the time of the crime. State v. Guidry, 450 So.2d 50 (3rd Cir.1984).
In the proceeding now before the Court, two court appointed forensic psychiatrists, Dr. Aris Cox and Dr. Richard Richoux, testified as experts that Melvin Jenkins has for some years had an illness called paranoid schizophrenia which causes him to have symptoms in which his thinking becomes disorganized so that he loses contact *795 with reality; many times he hears voices; feels that he is being mistreated, spied upon, or victimized in an irrational fashion; and often must be hospitalized. In the opinion of these two psychiatrists, Jenkins was psychotic at the time he stabbed Calvert Durapau on October 8, 1990, was having trouble interpreting reality, and could not distinguish right from wrong. It is relevant, however, to observe that Doctors Cox and Richoux did not examine Jenkins until January of 1991, over three months after the commission of the present offense, and both physicians admitted on cross-examination that they could not say with absolute certainty that Melvin Jenkins was always unable to distinguish between right and wrong.
On the other hand Jenkins’ uncle, Miles Jenkins, testified that he had known the accused all his life and that his nephew seems to understand what is right and wrong. Joe Webber, who had known the accused for about fifteen years, testified that he had never seen Jenkins do anything that was wrong. Evelyn Jenkins, Melvin’s mother, admitted that her son knows right from wrong. Further, Jenkins himself testified that he was on his medication on the day of the stabbing, and when asked by his own attorney whether he was crazy when the stabbing took place, Jenkins responded, “I would say that I wasn’t crazy at the time it happened. I was to my right senses.”
In denying the Motion for New Trial and Motion for Post Judge Verdict of Acquittal, the trial judge gave these reasons:
THE COURT:
The Court heard as the presiding Judge, since it was a jury trial, the testimony from various and sundry witnesses including expert witnesses namely, psychiatrists who are experts in their field and who are also experts in the field of Forensic Psychiatry.
The Court also heard from the defendant, Mr. Melvin Jenkins himself.
The thrust seems to be that the evidence was allegedly overwhelmingly in that the opinion of the doctors was to the effect that the man was in fact legally insane and did not know right from wrong at the time of the alleged offense and the jury, therefore, was in error when not following what Mr. Haffner feels was clear and convincing evidence of proof. As I said not following that they found Mr. Jenkins guilty as charged.
The Court distinctly remembers the doctors cautionally (sic) advancing that the (sic) there is in this sense and that they felt that yes he could have been lucid, there could have been periods of time when Mr. Jenkins by virtue of emissions (sic) of some sort of maybe taking his medication could in fact be in a situation where he did know right from wrong. Based on what Mr. Jenkins had told them and based on their appreciation of the scenario they did offer the opinion that he in fact did not know right from wrong and therefore was legally insane at the time of the offense.
The Court feels that the jury, just as the Judge heard, the jury heard the evidence and apparently concluded that there was in fact an opportunity for the defendant to, in fact, be able to know right from wrong at certain periods in his life and could well coincide with the period of the offense.
In addition, Mr. Jenkins took the stand and rather lucidly and convincingly and with some degree of articulation said he in fact knew what he was doing at the time and he related some of the aspects of the crime to which to some degree had not been brought forward until that time namely, “No, I was not in this or that posture.” “I had him against the railing”, et cetera, et cetera; therefore, the Court feels that the motion should be denied and the judgment, conviction should stand.
Counsel for defendant maintains that it would be tragic to let his client’s blindness to his own grave condition serve to uphold the verdict and, further, places emphasis on the fact that no expert testimony was offered by the State to rebut the evidence of insanity offered by the appellant. The answer to these is (1) the defendant’s as *796 sessment of his own condition was but one of several expressions by laymen on the subject and 2) we know of no authority nor have we been referred to any authority which requires or suggests the production of expert testimony on the subject. A diversity of opinions has been presented in previous cases which have revealed no expression requiring the production of expert testimony by either side or that such testimony, when offered, be accorded more weight than that of laymen. See State v. Nealy, supra; State v. Bell, 543 So.2d 1013 (3rd Cir.1989); State v. Standridge, 505 So.2d 256 (3rd Cir.1987).
As stated above, the defendant’s conviction rested upon a determination of the credibility of witnesses and a resolution of the conflicting testimony was made by the jury in favor of the State. The lower court’s denial of appellant’s post-trial motion was, therefore, proper.
The defendant’s second assignment of error relates to errors patent. In this connection, a review of the record reveals that the defendant was given an improper sentence in that he was sentenced to thirty (30) months at the Jefferson Parish Correctional Facility to be followed by five (5) years of active probation whereas C.Cr.P. Article 895 provides that “In felony cases, an additional condition of the probation may be that the defendant shall serve a term of imprisonment without hard labor for a period not to exceed two years ” (Article 895 B. Emphasis supplied). It is necessary, therefore, that the matter be remanded in order that the sentence be amended so as to be in accordance with the foregoing.
Accordingly, the conviction is affirmed, the sentence set aside and the case remanded for resentencing.
CONVICTION AFFIRMED, SENTENCE SET ASIDE, REMANDED FOR RESENTENCING.